SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Tahisha Roach v. BM Motoring, LLC (077125) (A-69-15)**

**Argued January 3, 2017 – Decided March 9, 2017**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court determines whether defendants' failure to advance the required arbitration fees for arbitration before the American Arbitration Association (AAA) constitutes a material breach of the parties' dispute resolution agreement (DRA), thereby precluding defendants from enforcing the agreement to arbitrate.

Plaintiffs Emelia Jackson and Tahisha Roach purchased used cars from BM Motoring, LLC, and Federal Auto Brokers, Inc., doing business as BM Motor Cars (collectively, BM). As part of the transaction, each plaintiff signed an identical DRA, which required resolution of disputes through an arbitration in accordance with the rules of the AAA before a retired judge or an attorney. Two months later, Jackson filed a demand for arbitration against BM with the AAA, asserting a claim under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -204, for treble damages and other relief based on overcharges and misrepresentations by BM. Despite repeated requests by the AAA, BM did not advance the filing fees that the DRA obligated it to pay, or otherwise respond to the claim. The AAA dismissed Jackson's arbitration claim for non-payment of fees.

Six months after her vehicle purchase, Roach filed a complaint in the Superior Court against BM and its president and vice president (collectively, defendants), alleging violations of the CFA and other consumer protection laws. Defendants filed a motion to dismiss the complaint for lack of jurisdiction based on the arbitration provision of the DRA. The court dismissed the complaint without prejudice in favor of arbitration. Roach then filed an arbitration demand with the AAA, which dismissed the claim because BM had previously failed to comply with the AAA's rules and procedures. Roach did not receive a response from BM to her arbitration demand.

Plaintiffs then filed this action against defendants, who moved to dismiss the complaint in favor of arbitration. Defendants contended that they did not contemplate using the AAA as the forum for arbitration, and consistently had not arbitrated customer disputes before the AAA, because of the excessive filing and administrative fees that the AAA charged. In opposition to the motion, plaintiffs asserted that defendants materially breached the DRA by failing to advance filing and arbitration fees, and waived their right to arbitration. Defendants contended that they neither breached the DRA nor waived arbitration because the AAA was not the appropriate arbitral forum. The trial court found that the parties intended to resolve disputes by arbitration, and the matter should therefore proceed in arbitration. The court ordered the parties to attempt to reinstate plaintiffs' claims with the AAA, and comply with AAA rules. The court further provided that if the AAA refused to administer the claim, plaintiffs could reinstate their complaint. The AAA reinstated the arbitration, and the court dismissed plaintiffs' complaint with prejudice. The Appellate Division affirmed the dismissal of the complaint, finding that there was a sufficient factual dispute as to the proper forum for arbitration that defendants' conduct did not constitute a material breach of the DRA, nor did they voluntarily and intentionally waive their right to enforce the DRA.

The Court granted plaintiffs' petition for certification. 224 N.J. 528 (2016).

**HELD:** Defendants' non-payment of filing and arbitration fees amounted to a material breach of the DRA. Defendants are therefore precluded from enforcing the arbitration provision, and the case will proceed in the courts.

1. Under the Federal Arbitration Act and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, arbitration agreements rest on equal footing with other contracts. Therefore, arbitration agreements are governed by principles of contract law and generally applicable contract defenses, which may be applied to invalidate arbitration agreements. The court must afford the terms of an arbitration agreement their plain and ordinary meaning, and must discern the parties' intent from the provisions of the agreement. If the meaning of a provision is ambiguous, it

1

should be construed against the drafter.  (pp. 12-13)

2.  In the event of a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.  A breach is material if it goes to the essence of the contract.  To determine whether a breach is material, this Court adopts the flexible criteria set forth in Section 241 of the Restatement (Second) of Contracts (1981).  Subsection (e) of Section 241 implicates the obligation of good faith and fair dealing that all contracts impose on the parties through an implied covenant that neither party shall do anything that will have the effect of destroying or impairing the right of the other party to receive the benefits of the contract.  (pp. 13-15)

3.  The Court has never decided whether failure to advance arbitration fees is a material breach of an agreement to arbitrate.  To answer that question, the Court turns to authority from other jurisdictions for guidance.  The Ninth and Tenth Circuit Courts of Appeals both have held that a party's failure to pay required fees constitutes a material breach of an arbitration agreement.  See Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir.), cert. denied, 136 S. Ct. 373 (2015); Sink v. Aden Enters., Inc., 352 F.3d 1197 (9th Cir. 2003); see also Brown v. Dillard's, Inc., 430 F.3d 1004, 1012 (9th Cir. 2005) (holding business materially breached arbitration agreement by refusing to "participate in properly initiated arbitration proceedings").  (pp. 15-18)

4.  As a preliminary matter, the Court must consider whether plaintiffs acted in accordance with the DRA when they filed arbitration claims with the AAA.  The DRA provides that arbitration shall be conducted before a single arbitrator, who is a retired judge or attorney.  The AAA maintains a national roster of arbitrators, which includes arbitrators who are retired judges and attorneys.  Therefore, the filing of an arbitration claim with the AAA is not inconsistent with the DRA's requirement of arbitrating before a single retired judge or attorney.  In addition, the DRA requires the parties to arbitrate in accordance with the rules of the AAA.  A commercial arbitration rule of the AAA, which was in effect when the DRA was signed and remains in effect today, provides that parties who agree to arbitrate in accordance with AAA rules thereby consent to AAA-administered arbitration.  Therefore, the DRA, which requires arbitration in accordance with the AAA rules, permits arbitration by the AAA.  In light of these provisions, plaintiffs' decision to arbitrate their respective claims with the AAA was proper under the DRA.  (pp. 18-20)

5.  Having addressed the preliminary question, the Court must next determine whether defendants' prelitigation conduct constituted a material breach of the DRA.  The benefit expected under an arbitration agreement is the ability to arbitrate claims.  A failure to advance required fees that results in the dismissal of the arbitration claim deprives a party of the benefit of the agreement.  Defendants' failure to advance the required arbitration fees goes to the essence of the DRA, and constitutes a material breach of the agreement.  Defendants' failure to pay the AAA fees, or respond to plaintiffs' arbitrations demands, also violated standards of good faith and fair dealing, and constitutes a breach of the implied covenant of good faith and fair dealing.  (pp. 21-22)

6.  Defendants' knowing refusal to cooperate with plaintiffs' arbitration demands, filed in reasonable compliance with the parties' agreement, constitutes a material breach of the DRA and bars defendants from compelling arbitration under the agreement.  The Court makes no determination as to whether defendants' conduct constitutes a waiver of the right to compel arbitration.  The Court also declines to establish a bright-line rule for determining whether a refusal or failure to respond to a written arbitration demand, within a reasonable time, constitutes a material breach of an arbitration agreement that precludes its enforcement.  Such determinations must be made on a case-by-case basis, after consideration of the terms of the agreement and conduct of the parties.  Here, plaintiffs satisfied their obligations under the DRA, and defendants' non-payment of filing and arbitration fees amounted to a material breach of the agreement.  Defendants are therefore precluded from enforcing the arbitration provision, and the case will proceed in the courts.  (pp. 22-23)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE, join in JUSTICE SOLOMON'S opinion.**

TAHISHA ROACH and EMELIA
JACKSON, on behalf of
themselves and all others
similarly situated,

    Plaintiffs-Appellants,

       v.

BM MOTORING, LLC and FEDERAL
AUTO BROKERS, INC., both
corporations, t/a BM MOTOR
CARS, BORIS FIDELMAN and
MIKHAIL FIDELMAN,

    Defendants-Respondents.

 

        Argued January 3, 2017 – Decided March 9, 2017

        On certification to the Superior Court, Appellate Division.

        Henry P. Wolfe argued the cause for appellants (The Wolf Law Firm and Law Office of David C. Ricci, attorneys; Mr. Wolfe and Mr. Ricci, on the briefs).

        Thomas C. Jardim argued the cause for respondents (Jardim, Meisner & Susser, attorneys; Mr. Jardim and Matthew A. Stoloff, on the brief).

        Andrew P. Bell argued the cause for amicus curiae Consumers League of New Jersey (Locks Law Firm, attorneys; Mr. Bell, James A. Barry and Michael A. Galpern, on the brief).

        Thaddeus P. Mikulski, Jr., submitted a brief on behalf of amicus curiae National Employment Lawyers Association of New Jersey.

JUSTICE SOLOMON delivered the opinion of the Court.

Plaintiffs Emelia Jackson and Tahisha Roach purchased used cars from BM Motoring, LLC, and Federal Auto Brokers, Inc., which do business as BM Motor Cars (collectively, BM). Each plaintiff signed an identical Dispute Resolution Agreement (DRA) as part of the transaction. The DRA provided for arbitration "in accordance with the rules" of the American Arbitration Association (AAA), "before a single arbitrator, who shall be a retired judge or attorney."

After Jackson purchased her car, she filed an arbitration demand against BM with the AAA. Despite repeated requests by the AAA, BM did not advance any filing fees or otherwise respond to the claim. The AAA dismissed Jackson's arbitration claim for non-payment of fees.

A few months after Roach's vehicle purchase, she filed a complaint against BM and its president and vice president (collectively, defendants) in the Law Division of the Superior Court. The court granted defendants' motion to dismiss Roach's complaint and compelled arbitration. Roach, accordingly, filed an arbitration demand with the AAA. The AAA, however, dismissed Roach's arbitration claim because BM had previously failed to comply with the AAA's rules and procedures.

2

Plaintiffs then filed this case against defendants, who moved to dismiss plaintiffs' complaint in favor of arbitration. In opposition to defendants' motion, plaintiffs asserted two affirmative defenses: (1) defendants materially breached the DRA by failing to advance filing and arbitration fees in response to plaintiffs' AAA arbitration demands; and (2) defendants waived their right to compel arbitration through their conduct. Defendants countered that they neither breached the DRA nor waived arbitration because the AAA was not the appropriate arbitral forum. The trial court dismissed plaintiffs' complaint with prejudice, and the Appellate Division affirmed.

We find that plaintiffs' choice of the AAA as the arbitral forum complied with the DRA and hold that defendants' failure to advance arbitration fees was a material breach of that agreement. We conclude, therefore, that defendants are barred from compelling arbitration. Thus, we reverse the judgment of the Appellate Division without reaching the issue of whether defendants' conduct constituted a waiver of the right to compel arbitration.

I.

The facts of record, which are not in dispute for the purposes of this appeal, are as follows.

A.

3

In August 2013, plaintiff Emelia Jackson purchased a used 2007 BMW from BM.  As part of the purchase, Jackson signed a DRA obligating the parties to resolve "any and all claims, disputes or issues" through arbitration.  The DRA specifies that

> [t]he arbitration shall be conducted in accordance with the rules of the American Arbitration Association [AAA] before a single arbitrator, who shall be a retired judge or attorney.  Dealership shall advance both party's [sic] filing, service, administration, arbitrator, hearing, or other fees, subject to reimbursement by decision of the arbitrator.[1]

In October 2013, Jackson filed an individual arbitration claim with the AAA against BM and served a copy on BM.  Jackson sought treble damages under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -204, alleging that BM refused to sell the vehicle for its advertised price, overcharged for title and registration, and misrepresented the terms of an extended warranty.

---

[1] Several copies of the DRA appear in the appendix.  Because of the small font size in those documents, none are easy to read.  However, we cannot tell from the record whether any of the copies are the same size as the original agreement.  We note that state law "requires that 'a consumer contract . . . be written in a simple, clear, understandable and easily readable way.'"  Morgan v. Sanford Brown Inst., 225 N.J. 289, 310 (2014) (quoting N.J.S.A. 56:12-2).  N.J.S.A. 56:12-10 provides certain guidelines to assess whether a consumer contract meets that standard.  Among other factors to consider are whether "the main promise" and the "[c]onditions and exceptions" of an agreement are in "at least 10 point type." N.J.S.A. 56:12(b)(3).  We do not consider this issue, however, as it has not been raised by the parties.

Approximately one week later, the AAA advised BM by letter that it was required to pay the applicable filing fees and arbitrator compensation deposit by October 29, 2013.  BM failed to pay, and the AAA notified both parties by a second letter that it could decline to administer future consumer disputes involving BM if BM did not adhere to the AAA's policies.  The AAA extended the payment deadline for ten days and suggested that "the opposing party" could pay the outstanding amount and seek recovery of the fees through the arbitrator's award.  BM again failed to pay the required fees or to take any action to acknowledge the letters from the AAA.

On November 13, 2013, the AAA sent a final letter to both parties, stating that the AAA declined to administer Jackson's claim for non-payment of fees.  The letter also indicated that the AAA would not administer "any other consumer disputes" involving BM due to BM's failure to comply with the AAA's rules and instructed BM to remove the AAA name from its arbitration agreement.  At no time did Jackson receive a response to her arbitration demand from BM.

B.

In February 2013, plaintiff Tahisha Roach purchased a used 2000 Nissan from BM and signed a DRA as part of the purchase agreement.  Six months later, Roach filed a complaint in the Law Division against defendants, alleging violations of the Consumer

Fraud Act, the Automotive Sales Practices Regulations, N.J.A.C. 13:45A-26A.1 to -26B.4, the New Jersey Uniform Commercial Code, N.J.S.A. 12A:9-101 to -809, and the Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18.

Defendants filed a motion to dismiss for lack of jurisdiction based on the terms of the DRA. The court dismissed the action without prejudice in favor of arbitration.

In January 2014, Roach filed an arbitration demand with the AAA and sent notice of the demand to defendants. The AAA replied by letter to both parties, stating that BM had "previously not complied with [the AAA's] request to adhere [to its] policies regarding consumer claims; therefore, [the AAA] currently cannot accept for administration any disputes involving [defendants]." Two weeks later, the AAA sent a second letter repeating that it "must decline to administer this claim and any other claims between this business and its consumers." The AAA closed Roach's claim. As with Jackson, Roach never received a response to her arbitration demand from BM.

C.

In March 2014, Roach and Jackson filed a complaint in the Superior Court, Law Division, asserting individual and other claims against defendants.

Defendants moved to dismiss plaintiffs' complaint and compel arbitration. In support of their motion, defendants

asserted that the DRA did not "contemplate using AAA as the forum and venue for arbitration" and that BM had "consistently not arbitrated disputes with its customers by utilizing AAA . . . primarily because of the excessive filing and administrative fees charged by AAA." Defendants also claimed that Jackson and Roach never pursued arbitration in accordance with the DRA.

In response, plaintiffs explained their efforts to comply with the DRA and represented that "[a]t no time prior to filing the present motion papers did [d]efendants or their attorney express any objections about the AAA administering arbitrations under the [DRA]." Plaintiffs asserted that they terminated the DRA because defendants materially breached the agreement by failing to pay the AAA fees and engage in arbitration.

The trial court found that the parties intended "to go to arbitration" by signing the DRA and, thus, they "should remain faithful to that clause, and . . . [the matter] should be arbitrated." The court ordered the parties to attempt to reinstate plaintiffs' claims with the AAA and to comply with AAA rules. If the AAA refused to administer the claim, the trial court provided that plaintiffs could return to court and reinstate their complaint. The AAA reinstated arbitration, and

7

the court entered a final order dismissing plaintiffs' complaint with prejudice.[2]

On appeal, the Appellate Division affirmed the dismissal. The panel concluded that the record showed a sufficient factual dispute as to the proper forum for arbitration to justify defendants' failure to respond to plaintiffs' arbitration claims. Accordingly, it found that defendants had not materially breached the DRA. The panel also concluded that defendants did not voluntarily and intentionally waive their right to enforce the DRA, that defendants' litigation conduct was not inconsistent with their right to enforce the arbitration agreement, and that plaintiffs suffered no prejudice from the timing of the motion because they had recourse if defendants did not abide by the trial court's order.

This Court granted plaintiffs' petition for certification. 224 N.J. 528 (2016). We also granted the Consumers League of New Jersey (CLNJ) leave to appear as amicus curiae and the National Employment Lawyers Association of New Jersey, Inc. (NELA-NJ) leave to file a brief as an amicus curiae.

## II.

---

[2] Although not part of the record on appeal, plaintiffs contend that, after the AAA reinstated their arbitration demands, BM again refused to pay the applicable fees. The parties agreed, however, to hold in abeyance the arbitration proceedings pending plaintiffs' appeal of the trial court's order.

A.

Plaintiffs argue that, in the context of a consumer contract for the sale of a used car, a dealership's failure to advance the filing fees could effectively bar a consumer's ability to arbitrate, making the requirement to advance fees a material term of the agreement. To avoid incentivizing businesses to ignore arbitration demands in hopes that the customer will abandon the claim, plaintiffs urge this Court to adopt the rule advanced in Brown v. Dillard's, Inc., 430 F.3d 1004, 1012 (9th Cir. 2005) -- that a business's refusal to participate in "properly initiated arbitration proceedings" precludes that business from later enforcing the arbitration agreement. Plaintiffs also contend that, regardless of whether defendants had a valid objection to the AAA as the forum, failure to respond in any way to the arbitration demands was a material breach of the DRA.

Plaintiffs further argue that the purported "dispute" as to the proper forum for arbitration is a fabrication and defendants had no good-faith basis for ignoring plaintiffs' demands filed with the AAA. In support, plaintiffs cite the provision in the DRA that disputes be arbitrated in accordance with AAA rules, as well as AAA Rule R-2, which specifies that parties who agree to arbitrate in accordance with its rules thereby consent to AAA-administered arbitration.

B.

In defendants' view, the Appellate Division properly determined that defendants did not materially breach the DRA because the agreement does not designate the AAA as the proper forum and instead provides for arbitration "by a retired judge or retired attorney who would follow the AAA rules." Defendants thus argue that plaintiffs, in initiating arbitration with the AAA, failed to adhere to the DRA. Defendants assert that, as a result, they were not obligated to advance any fees or comply with the AAA's demands, and their failure to do so was not in bad faith.

Defendants stress that they made clear before the trial court that they were willing to arbitrate and never refused to do so. Because there was a genuine factual dispute over the proper forum for arbitration and the proper interpretation of the DRA, the trial court and Appellate Division were correct to find no material breach.

Defendants additionally argue that they did not waive their right to compel arbitration because they immediately moved to dismiss plaintiffs' complaint and to enforce arbitration and did not improperly use the litigation process. Defendants assert that plaintiffs suffered no prejudice when their complaint was dismissed in favor of arbitration.

C.

The CLNJ contends as amicus that the DRA is a contract of adhesion offered by defendants to consumers on a take-it-or-leave-it basis and that, as a result, any ambiguity in the DRA should be strictly construed against defendants. According to the CLNJ, plaintiffs properly availed themselves of the arbitration provision in the agreement by commencing arbitration with the AAA because the DRA implicitly designates AAA as the arbitral forum and because, even if the DRA lacks a choice-of-forum provision, plaintiffs' choice should not be disturbed absent a showing of substantial prejudice to defendants.

The NELA-NJ adds that, as a matter of public policy, this Court should not allow retailers to deny consumers their basic contractual rights by requiring an arbitration agreement as a condition of a purchase. The NELA-NJ argues for the adoption of a bright-line rule that "a party's refusal or failure to either respond to a written demand for arbitration or to promptly engage in the arbitration process within a reasonably short timeframe constitutes a material breach of an arbitration agreement that precludes enforcement by the breaching party."

III.

We begin with a review of the principles that govern the interpretation of contracts and arbitration agreements.

A.

11

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1 to 16, to "reverse the longstanding judicial hostility" towards arbitration agreements and to "place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26, 36 (1991). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C.A. § 2.]

The New Jersey Legislature codified the same principles in favor of arbitration in the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015).

The FAA preempts state laws that single out and invalidate arbitration agreements. Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996). Thus, to keep arbitration agreements on "equal footing" with other contracts, a court "'cannot subject an arbitration agreement to more burdensome requirements than' other

12

contractual provisions." Atalese, supra, 219 N.J. at 441 (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003)). Therefore, arbitration agreements, such as the DRA here, are contracts governed by principles of contract law, and "generally applicable contract defenses . . . may be applied to invalidate" them. Doctor's Assocs., supra, 517 U.S. at 687, 116 S. Ct. at 1656, 134 L. Ed. 2d at 909.

In our review of an arbitration agreement, the agreement's terms "are to be given their plain and ordinary meaning." M.J. Paquet v. N.J. DOT, 171 N.J. 378, 396 (2002). We are tasked with discerning "the intent of the parties." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). If the meaning of a provision is ambiguous, the provision should be construed against the drafter because, "as the drafter, it chose the words that may be susceptible to different meanings." Id. at 224.

In the event of a "breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). As this Court has explained, a breach is material if it "goes to the essence of the contract." Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961). To determine if a breach is material, we adopt the flexible criteria set forth in Section 241 of the Restatement (Second) of

13

Contracts (1981) (Restatement (Second)).[3]  Thus, we must

consider:

> (a)  the extent to which the injured party
> will be deprived of the benefit which he
> reasonably expected;
>
> (b)  the extent to which the injured party can
> be adequately compensated for the part of that
> benefit of which he will be deprived;
>
> (c)  the extent to which the party failing to
> perform or to offer to perform will suffer
> forfeiture;
>
> (d)  the likelihood that the party failing to
> perform or to offer to perform will cure his
> failure, taking account of all the
> circumstances including any reasonable
> assurances; [and]
>
> (e)  the extent to which the behavior of the
> party failing to perform or to offer to
> perform comports with standards of good faith
> and fair dealing.
>
> [Restatement (Second), supra, § 241.]

Subsection (e) implicates the duty of good faith and fair

dealing that all contracts impose on their parties.  Wilson v.

Amerada Hess Corp., 168 N.J. 236, 245 (2001) (citing Restatement

(Second), supra, § 205).  This duty is an "implied covenant that

'neither party shall do anything which will have the effect of

---

[3] Our adoption of Section 241 is in line with this Court's
reliance on the Second Restatement of Contracts to decide
breach-of-contract claims.  See, e.g., Owen v. CNA Ins./Cont'l
Cas. Co., 167 N.J. 450, 466-67 (2001) (applying Second
Restatement to construe non-assignment provision); Kutzin v.
Pirnie, 124 N.J. 500, 516 (1991) (adopting Section 374(1) of
Second Restatement to determine damages).

14

destroying or injuring the right of the other party to receive the fruits of the contract.'" Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

### B.

This Court has never decided whether failure to advance arbitration fees is a material breach of an agreement to arbitrate.  To answer this question, we turn to authority from other jurisdictions for guidance.

The Ninth Circuit addressed this issue in Sink v. Aden Enters., Inc., 352 F.3d 1197 (9th Cir. 2003).  In that case, an employee filed a federal lawsuit against his employer, and the court referred the matter to arbitration pursuant to the parties' employment agreement.  Id. at 1198.  The arbitrator dismissed the claim when the employer refused to advance the arbitration fees.  Id. at 1198-99.  The employee returned to court, and the district court concluded that the employer both defaulted[4] and waived its right to arbitrate.  Id. at 1199.  The

---

[4] The Ninth Circuit defined "default" as "the omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due."  Sink v. Aden Enters., Inc., 352 F.3d 1197, 1199 n.2 (9th Cir. 2003) (quoting Default, Black's Law Dictionary (7th ed. 1999)).  Under the FAA, a district court is not obligated to stay litigation in favor of arbitration if a party is in default.  Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1295 (10th Cir.), cert. denied, ___ U.S. ___, 136 S. Ct. 373, 193 L. Ed. 2d 292 (2015).

15

Ninth Circuit affirmed the trial court, concluding that the employer defaulted in the arbitration because its "failure to pay required costs of arbitration was a material breach" of the parties' agreement. Id. at 1201-02. The Ninth Circuit explained that referring the case to arbitration at that point would

> allow a party refusing to cooperate with arbitration to indefinitely postpone litigation. Under [the employer's] interpretation, the sole remedy available to a party prejudiced by default would be a court order compelling a return to arbitration. The same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims.

[Id. at 1201.]

Two years later, in Brown, supra, the Ninth Circuit held that a business materially breached an arbitration agreement by refusing to "participate in properly initiated arbitration proceedings." 430 F.3d at 1006. The plaintiff was a former employee of a Dillard's department store who signed an arbitration agreement as a condition of her continued employment. Id. at 1006-07. The plaintiff filed a notice of intent to arbitrate with the AAA after she was terminated and paid her share of the filing fees, but Dillard's failed to pay its share. Id. at 1008-09. After the plaintiff filed a

16

complaint in state court, Dillard's removed the action to federal court and moved to compel arbitration. Id. at 1009. The district court denied Dillard's motion, ibid., and the Ninth Circuit affirmed:

> If we took Dillard's view and allowed it to compel arbitration notwithstanding its breach of the arbitration agreement, we would set up a perverse incentive scheme. Employers like Dillard's would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings.
>
> [Id. at 1012.]

The Tenth Circuit has likewise held that a party's failure to pay required fees constitutes a material breach of an arbitration agreement. Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir.), cert. denied, ___ U.S. ___, 136 S. Ct. 373, 193 L. Ed. 2d 292 (2015). In Pre-Paid Legal Services, the plaintiff sued its former employee in state court for breach of a non-compete clause in his employment contract. Id. at 1288. The employee removed the action to federal court and moved to stay litigation pending arbitration, pursuant to the parties' arbitration agreement. Ibid. The district court granted the stay, and Pre-Paid initiated arbitration proceedings

17

with the AAA, paying the required fees.  Ibid.  The employee, however, did not pay his share, and, after repeated requests for payment, the AAA terminated the arbitration.  Id. at 1288-89.  Thereafter, the district court lifted the stay, allowing litigation to proceed.  Id. at 1289.  The Tenth Circuit affirmed, concluding that the employee "breached the arbitration agreement by failing to pay his fees in accordance with AAA rules."  Id. at 1294.  The panel noted that its decision was consistent with the Ninth Circuit's determinations in Sink and Brown.  Ibid.

### IV.

With those principles in mind, we turn to the case presently before the Court.  We exercise plenary review over the legal determinations that support an order to compel arbitration but remain "mindful of the strong preference to enforce arbitration agreements."  Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

### A.

As a preliminary matter, we note that defendants' arguments against a finding of breach rely on the assumption that plaintiffs did not act in accordance with the DRA when they filed arbitration claims with the AAA.  If the DRA did not permit plaintiffs to file a claim with the AAA, plaintiffs' actions would not have triggered defendants' obligation to

18

respond, and the non-payment of fees would not constitute a breach of the DRA.  Thus, we must first determine whether the DRA allowed plaintiffs to arbitrate with the AAA.

Our interpretation of the DRA requires us to give the DRA's terms their "plain and ordinary meaning."  M.J. Paquet, supra, 171 N.J. at 396.  If the meaning of a provision is ambiguous, it should be construed against defendants as the agreement's drafters in this case.  See Kieffer, supra, 205 N.J. at 224.

The DRA provides that "[t]he arbitration shall be conducted . . . before a single arbitrator, who shall be a retired judge or attorney."  The AAA maintains a national roster of arbitrators, which includes arbitrators who are retired judges and attorneys.  Therefore, the filing of an arbitration claim with the AAA is not inconsistent with the DRA's requirement of arbitrating before a single retired judge or attorney.

In addition, the DRA calls for the parties to arbitrate "in accordance with the rules" of the AAA.  AAA Commercial Arbitration Rule R-2, which was in effect at the time the DRA was signed and remains in effect today, specifies that parties who agree to arbitrate in accordance with AAA rules consent to AAA-administered arbitration.[5]  Thus, we conclude that

---

[5]  In its letter acknowledging receipt of Jackson's arbitration demand, the AAA confirmed that its Commercial Arbitration Rules, as opposed to its Consumer Arbitration or other rules, would apply to the arbitration.

19

arbitration "in accordance with" the AAA rules permits arbitration by the AAA.

Plaintiffs chose to arbitrate with the AAA, and a "plaintiff's choice of forum is entitled to preferential consideration." Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 557 (2011). Because we find that the language of the DRA permitted arbitration with the AAA -- or at the very least left open to question the proper forum -- we will not disturb plaintiffs' reasonable choice to arbitrate with the AAA.

We add that our conclusion should come as no surprise to defendants. By requiring that arbitration be conducted pursuant to the AAA's rules, defendants reasonably should have expected that customers would file claims directly with the AAA. Moreover, even if the terms of the DRA "are susceptible to at least two reasonable alternative interpretations," Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 122 (2006) (quoting M.J. Paquet, supra, 171 N.J. at 396), as defendants assert, the agreement is ambiguous and should be "strictly construed against" defendants, ibid. (quoting In re Estate of Miller, 90 N.J. 210, 221 (2002)). That is especially true because the DRA has indicia of being a contract of adhesion in that plaintiffs lacked equal "bargaining power" in agreeing to its terms. See id. at 122-23.

B.

20

We must next determine whether defendants' prelitigation conduct constituted a material breach of the DRA. As we do so, we keep in mind the Second Restatement's "flexible criteria" for assessing a material breach, Neptune Research & Dev., Inc. v. Teknics Indus. Sys., Inc., 235 N.J. Super. 522, 532 (App. Div. 1989), and recognize that defendants' material breach would relieve plaintiffs of their obligations under the DRA, Nolan, supra, 120 N.J. at 472.

The benefit expected under an arbitration agreement is the ability to arbitrate claims. A failure to advance required fees that results in the dismissal of the arbitration claim deprives a party of the benefit of the agreement. Therefore, the failure to advance fees "goes to the essence" of the DRA and amounts to a material breach. Ross Sys., supra, 35 N.J. at 341; Restatement (Second), supra, § 241(a).

Additionally, defendants owed plaintiffs a duty of good faith and fair dealing. See Wilson, supra, 168 N.J. at 245; Restatement (Second), supra, § 241(e). That is, by entering into the DRA, they implicitly covenanted to do nothing "which [would] have the effect of destroying or injuring the right of [plaintiffs] to receive the fruits of the [DRA]." Wilson, supra, 168 N.J. at 245 (quoting Sons of Thunder, Inc., supra, 148 N.J. at 421).

There is no dispute that defendants failed to advance filing fees after Jackson filed her arbitration claim with the AAA and failed to otherwise engage in arbitration after the AAA refused to arbitrate Roach's claim due to defendants' prior actions. Several months after the arbitration demands were filed and served, plaintiffs filed their complaint in the Superior Court. It was only then that defendants first asserted that the DRA "does not contemplate using AAA as the forum" and that they consistently do not arbitrate before the AAA because of "the excessive administrative fees." Had there truly been a dispute regarding the proper forum, defendants should have alerted plaintiffs within a reasonable time. As the Appellate Division noted, "BM's non-response to plaintiffs' initial claim was problematic." We conclude that defendants' failure to pay the AAA fees or respond to plaintiffs' arbitration demands was not only problematic, but also did not comport with the standards of good faith and fair dealing.

Thus, we hold that defendants' knowing refusal to cooperate with plaintiffs' arbitration demands, filed in reasonable compliance with the parties' agreement, amounts to a material breach of the DRA and, as such, bars the breaching party from later compelling arbitration.[6] We share the concerns of the

---

[6] We find that the Second Restatement's factors in Section 241(a) and (e) heavily favor the result here and are not undercut by

22

Ninth Circuit as expressed in Brown that, without a finding of material breach, the result would be a "perverse incentive scheme" -- a company could ignore an arbitration demand and, if the claimant did not abandon the claim, later compel arbitration.  Brown, supra, 430 F.3d at 1012.

Nevertheless, we establish no bright-line rule.  The determination of whether refusal or failure to respond to a written arbitration demand within a reasonable time period constitutes a material breach of an arbitration agreement that precludes enforcement by the breaching party must be made on a case-by-case basis after considering the agreement's terms and the conduct of the parties.

Here, plaintiffs satisfied their obligations under the DRA, and defendants' non-payment of filing and arbitration fees amounted to a material breach of the agreement.  Defendants are therefore precluded from enforcing the arbitration provision, and the case will proceed in the courts.

V.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

the other Section 241 factors.  Accordingly, we see no need to address factors (b) through (d), which are not pertinent here.

23

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE, join in JUSTICE SOLOMON'S opinion.