**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2676-17T1

DONNA KIRALY,

     Plaintiff-Appellant,

v.

FORCEPOINT, INC.,
DENNIS EVERSEN, and
JULIE MARTINEZ,

     Defendants-Respondents,

and

RAYTHEON WEBSENSE, INC.,
KYLE MCGUIRE, and AUTUMN
SANGREY,

     Defendants.

_____

          Argued September 18, 2018 – Decided  October 2, 2018

          Before Judges Ostrer and Currier.

          On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2094-17.

G. Martin Meyers argued the cause for appellant (Law Offices of G. Martin Meyers, PC, attorneys; G. Martin Meyers and Susan S. Singer, on the briefs).

Jessica A. Burt argued the cause for respondents (Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys; Steven J. Luckner and Jessica A. Burt, on the brief).

PER CURIAM

Plaintiff Donna Kiraly appeals from the January 19, 2018 order dismissing her complaint and compelling arbitration. Because we discern the arbitration agreement did not include a sufficiently clear waiver of plaintiff's right to litigate her claims in court, we reverse.

In January 2015, plaintiff was hired by defendant Forcepoint, Inc.[1] as a member of its sales force. She was terminated in November 2015. In her complaint, plaintiff alleged sexual harassment, gender discrimination, and a hostile work environment during her employment. She alleges that after she objected to the conduct, she was retaliated against and terminated. Plaintiff asserts causes of action against defendant under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to - 49, and a common law claim for malicious interference with economic relations.

---

[1] Defendants Dennis Eversen and Julie Martinez were employees of Forcepoint. The remaining defendants were not served with the complaint.

At the time of plaintiff's hiring, she signed a Confidentiality, Invention Assignment, Non-Solicit, Non-Compete, and Arbitration Agreement (arbitration agreement). The agreement incorporated a two-page Dispute Resolution Addendum detailing the arbitration requirements, processes and procedures. The addendum and agreement were executed simultaneously.

On pages four and five of the eight-page, single-spaced, small font agreement, paragraph 10 entitled "Arbitration" states:

> In the event of any controversy or dispute between you and the Company or between you and any affiliate or an agent of Company, including but not limited to directors, officers, managers, other employees or members of the Group, who are being sued in any capacity, as to all or any part of this Agreement, any other agreement, or any dispute or controversy whatsoever pertaining to or arising out of the relationship between you and the Company, or the dissolution or termination of same (collectively, "Arbitrable Disputes") shall, subject to Section 11.1 herein [pertaining to injunctive relief sought by the Company] be resolved exclusively by binding arbitration solely between yourself and the Company conducted in Princeton, New Jersey, which shall be conducted in accordance with the procedures set forth in the Dispute Resolution Addendum appended hereto as Schedule 2 (the "Addendum"), all of which are incorporated into this Agreement by reference . . . .

The addendum provides that "all [a]rbitrable [d]isputes shall be resolved only by final and binding arbitration conducted privately and confidentially by

3

a single arbitrator selected as specified in this Addendum."  The Addendum provides details on the one-year time limitation to bring a claim, initiating the arbitration process, selecting an arbitrator, choice of law, discovery process, hearing and award procedures.  Section M provides: "[t]he parties agree that reliance upon courts of law of equity can add significant costs and delays to the process of resolving disputes.  Accordingly, they recognize that an essence of this Agreement is to provide for the submission of all Arbitrable Disputes to binding arbitration."

In lieu of an answer, defendants filed a motion to dismiss the complaint and to compel arbitration under the agreement.  In the January 19, 2018 oral decision, the motion judge found the language in paragraph 10 of the arbitration agreement was "unambiguous and clearly encompasse[d] the claims asserted by plaintiff in this action."  In finding the agreement enforceable, the judge granted defendants' motion.

We review the court's order dismissing the complaint de novo because it is founded on a determination of a question of law — the validity of the arbitration agreement.  Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015).  "Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation.  Our approach

in construing an arbitration provision of a contract is governed by the same de novo standard of review." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) (citations omitted).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, reflect federal and state policies favoring arbitration of disputes. Roach v. BM Motoring, LLC, 228 N.J. 163, 173-74 (2017); Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). The FAA was enacted "to 'reverse the longstanding judicial hostility' towards arbitration agreements and to 'place arbitration agreements upon the same footing as other contracts,'" and it "preempts state laws that single out and invalidate arbitration agreements." Roach, 228 N.J. at 173-74 (first quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); then citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)); see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1426 (2017). A court "'cannot subject an arbitration agreement to more burdensome requirements than' other contractual provisions." Roach, 228 N.J. at 174 (quoting Atalese, 219 N.J. at 441).

We look to Atalese, the controlling law in New Jersey, for guidance in our review of the agreement and addendum. There, the Supreme Court reaffirmed

that an arbitration agreement, "like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" 219 N.J. at 442 (citation omitted). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid. "This requirement of a 'consensual understanding' about the rights of access to the courts that are waived in the agreement has led our courts to hold that clarity is required." Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C., 416 N.J. Super. 30, 37 (App. Div. 2010) (citation omitted).

Plaintiff argues on appeal, as she did in the trial court, that the arbitration agreement failed to apprise her she was waiving the right to bring a claim in court or try her case to a jury. We agree.

In Atalese, the Court held that "the absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." Id. at 436. For guidance, the Court provided examples of valid arbitration clauses. Id. at 444. The Court noted our decision in Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010), where we "upheld an arbitration clause, which expressed that '[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes,

such as a court action or administrative proceeding, to settle their disputes.'" Atalese, 219 N.J. at 445.

The Court also approved of arbitration clauses stating, "the plaintiff agreed 'to waive [her] right to a jury trial,'" and "[i]nstead of suing in court, we each agree to settle disputes . . . only by arbitration," where "[t]here's no judge or jury." Id. at 444-45 (citations omitted). We have stated, however, that a valid arbitration agreement does not require advice on all component rights encompassed in a waiver seeking relief in court. Such a requirement would render arbitration clauses too complex, hard to understand, and easy to invalidate, in contravention of the strong public policy favoring arbitration. See Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 480-81 (App. Div. 2015) (upholding an arbitration clause stating the parties would not "be able to sue in court," and rejecting plaintiffs' argument that "the arbitration agreement must inform the parties of (1) the number of jurors, (2) the parties' rights to choose the jurors, (3) how many jurors would have to agree on a verdict, and (4) who will decide the dispute instead of the jurors.").

We are mindful of the Court's mandate in Atalese that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." 219 N.J. 444. But, an enforceable arbitration agreement, "at least in

7

some general and sufficiently broad way, must explain that plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

Here, the arbitration clause and addendum are deficient under the Atalese standards. While the documents refer to binding arbitration and detail the process, they lack any reference to the waiver of any right, or that plaintiff is foreclosed from bringing a claim in court. The signor of the agreement is never advised that arbitration is a waiver of the right to bring suit in a judicial forum. The agreement lacks the simple language described in Atalese to ensure a knowledgeable waiver. Without any reference to the waiver of the right to have his or her claims litigated in court, the "average member of the public" presented with this agreement and addendum "may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. The failure to apprise plaintiff of the surrender of her right to pursue her claims in court renders this arbitration agreement unenforceable.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-2676-17T1