**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3347-23

ELIZABETH MURRAY,

     Plaintiff-Appellant,

v.

RUTGERS CANCER INSTITUTE
OF NEW JERSEY, ACTALENT
SCIENTIFIC, LLC, GINETTE
WATKINS-KELLER, and
KASSIDY GREGORY,

     Defendants-Respondents.

_____

Argued March 4, 2025 – Decided March 26, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6504-23.

Austin B. Tobin argued the cause for appellant (McOmber McOmber & Luber, PC, attorneys; Austin B. Tobin and Jeffery P. Rankel, on the briefs).

M. Trevor Lyons argued the cause for respondents Rutgers Cancer Institute and Ginnette Watkins-Keller (Walsh Pizzi O'Reilly Falanga, LLP, attorneys; M.

Trevor Lyons, of counsel and on the brief; Dierdre T. Cooney and Christine P. Clark, on the brief).

Elyse N. Cohen (Nelson Mullins Riley & Scarborough, LLP) argued the cause for respondents Actalent Scientific, LLC and Kassidy Gregory.

PER CURIAM

Plaintiff Elizabeth Murray, Psy.D., (Dr. Murray) appeals from two trial court orders dismissing her claims under the New Jersey Law Against Discrimination (LAD)[1] and compelling arbitration of those claims. Because the trial court's findings of fact and conclusions of law are insufficient to permit appellate review, we reverse and remand for further proceedings consistent with this opinion.

I.

Dr. Murray began working for defendants Actalent Scientific, LLC (Actalent) and Rutgers Cancer Institute of New Jersey (CINJ) in January 2022. Prior to starting work, Dr. Murray had to complete several tasks, including submitting to a health examination and reviewing Actalent's policies and procedures.

---

[1] N.J.S.A. 10:5-1 to -49.

A-3347-23

While waiting for her exam, an Actalent representative instructed Dr. Murray to access an online portal to "click through a series of company policies." The record shows that she clicked on and electronically signed a document labeled a "Mutual Arbitration Agreement" (MAA). The MAA states in pertinent part:

> As consideration for my application for and/or my employment with Actalent Scientific, LLC and for the mutual promises herein, I and the Company (as defined below) (each a "party" and collectively "the parties") agree that:
>
>> Except (i) as expressly set forth in the section, "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that I may have against Actalent Scientific, LLC and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me, including contract claims; tort claims; discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to my application for employment with the Company, and/or my employment with the Company, and/or the terms and conditions of my employment

> with the Company, and/or termination of my employment with the Company (collectively "Covered Claims"), are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury. The parties hereby forever waive and give up the right to have a judge or a jury decide any Covered Claims.

The MAA also contained language stating Dr. Murray was waiving her right to a jury trial on the covered claims.

After working for several months, Dr. Murray was diagnosed with a serious medical condition, which in turn, precipitated her taking short-term disability leave. On May 16, 2022, Dr. Murray contacted her Rutgers supervisor, Ginette Watkins-Keller (Watkins-Keller), advising Watkins-Keller she was ready to return to work. Later that day, Kassidy Gregory (Gregory), a recruiter for Actalent, fired Dr. Murray.

Dr. Murray sued Rutgers, The State University of New Jersey (Rutgers),[2] Actalent, Watkins-Keller, and Gregory, raising claims of disability discrimination and retaliation under the LAD. After a venue transfer, defendant Actalent and defendants Rutgers and Watkins-Keller separately moved to dismiss Dr. Murray's complaint and compel arbitration. Defendant Gregory was

---

[2] Improperly pled as "Rutgers Cancer Institute of New Jersey."

4                                                                    A-3347-23

not a party to either of these motions. Actalent contended that Dr. Murray knowingly and voluntarily waived her right to a jury trial, that the MAA was not unconscionable, that the MAA was not vague, and that Dr. Murray was not entitled to a preliminary hearing. Rutgers and Watkins-Keller, while raising similar issues, also argued that the MAA applied to them because they were either a "client or customer" of Actalent or an intended third-party beneficiary of the MAA.

The trial court decided both motions without argument, granting Actalent's motion on May 24, 2024 and granting Rutgers and Wakins-Keller's motion on June 20, 2024.[3] The trial court provided no statement of reasons with either order.

Dr. Murray appealed, and the trial court supplemented the record for each order. The court amended its May 24 and June 20 orders by changing their dates to July 2, and affixing a written statement of reasons, which read:

> This is a LAD, employment case (that does not allege sexual harassment). The order entered by the court was for a without prejudice dismissal. During Dr. Murray's onboarding she signed a Mutual Arbitration Agreement (MAA). Same was dated January 4, 2022. The MAA is valid on its face. Plaintiff's complaint fails to seek any declaratory relief declaring the MAA void or otherwise unenforceable.

---

[3] Neither of these orders dismissed plaintiff's cases against defendant Gregory.

Dr. Murray appeals, arguing that the trial court erred by finding the MAA enforceable, and by failing to provide a proper statement of reasons in support of its orders dismissing her complaint.

II.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a motion under Rule 4:6-2(e), "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Id. at 171 (quoting Dimitrakopoulos, 237 N.J. at 107).

We review de novo a trial court's interpretation and construction of a contract, Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014), as well as its judgment dismissing plaintiff's complaint and compelling arbitration. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020) (first citing Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019); and then citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016)). "We owe no special deference to the trial court's interpretation of an arbitration provision,

which we view 'with fresh eyes.'" Ogunyemi v. Garden State Med. Ctr., 478

N.J. Super. 310, 315 (App. Div. 2024) (quoting Morgan, 225 N.J. at 303).

III.

Rule 1:7-4(a) states as follows:

> Required Findings. The court shall, by an
> opinion or memorandum decision, either written or
> oral, find the facts and state its conclusions of law
> thereon in all actions tried without a jury, on every
> motion decided by a written order that is appealable as
> of right, and also as required by R. 3:29. The court shall
> thereupon enter or direct the entry of the appropriate
> judgment.

Our capacity to resolve appeals is a direct function of the trial court's

adherence to its obligation to clearly state findings of fact and conclusions of

law pursuant to Rule 1:7-4(a). The rule requires a trial court to "'state clearly

[its] factual findings and correlate them with the relevant legal conclusions, so

that parties and the appellate courts [are] informed of the rationale underlying

th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574,

594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212

N.J. Super. 557, 565 (App. Div. 1986)). Without a statement of reasons, "we

are left to conjecture as to what the judge may have had in mind." Salch v.

Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). "[N]either the parties nor we

are well-served by an opinion devoid of analysis or citation to even a single case." Great Atl. & Pac. Tea Co., Inc. v. Checcio, 335 N.J. Super. 495, 498 (App. Div. 2000).

The Federal Arbitration Act (FAA)[4] and the New Jersey Arbitration Act[5] represent a legislative choice "to keep arbitration agreements on 'equal footing' with other contracts." Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014)). Under both statutes, "arbitration is fundamentally a matter of contract," and should be regulated according to general contract principles. Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (2022) (first citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); and then citing NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)).

"Notwithstanding the FAA's preemptive effect, federal law 'specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles.'" Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

---

[4] 9 U.S.C. §§ 1-16.

[5] N.J.S.A. 2A:23B-1 to -32.

"New Jersey may 'regulate agreements, including those that relate to arbitration, by applying its contract-law principles that are relevant in a given case.'" Ibid. (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)). "Accordingly, we look to state-law principles generally applicable to contracts involving the waiver of rights as the governing law in this appeal." Ibid.

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021) (citing Martindale, 173 N.J. at 83).

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese, 219 N.J. at 442). "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan, 236 N.J. at 319). "In the employment setting, we require 'an express waiver of the right to seek relief in a court of law,' due to the generally unequal relationship between the contracting parties." Ogunyemi, 478 N.J. Super. at 316 (quoting Cnty. of Passaic v. Horizon Healthcare Servs., Inc., 474 N.J. Super. 498, 503 (App. Div. 2023)). "Employees should at least know that they have

A-3347-23

'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" Atalese, 219 N.J. at 447 (alteration in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 135 (2001)).

The trial court's written statement of reasons consisted of six relatively short sentences. Its factual findings were limited to the following: "During Dr. Murray's onboarding she signed a Mutual Arbitration Agreement (MAA). Same was dated January 4, 2022 . . . Plaintiff's complaint fails to seek any declaratory relief declaring the MAA void or otherwise unenforceable." The court's sole legal conclusion was that "[t]he MAA [was] valid on its face."

The court's stated findings of fact and conclusions of law on the two dipositive motions are insufficient. To compound matters, the court cited no legal authority to support its conclusion that Dr. Murray's complaint should be dismissed. Given the paucity of the record, we vacate both July 2 orders and remand to the trial court to conduct argument on the motions to dismiss within 30 days of the date of the issuance of this opinion. Upon completion of argument, the court shall make findings, apply the relevant law, and issue an oral or written statement of reasons consistent with the requirements of Rule 1:7-4(a).

Reversed and remanded.  We retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3347-23