**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1113-24

CAPE MAY SEASHORE
LINES, INC.,

     Plaintiff-Respondent,

v.

PRO-SPEC PAINTING
CORPORATION and
RONALD W. YARBROUGH,

     Defendants-Appellants.

_____

Submitted December 1, 2025 – Decided December 8, 2025

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0241-24.

Hegge & Confusione, LLC, attorneys for appellants (Michael Confusione, of counsel and on the briefs).

Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys for respondent (Francis J. Ballak, of counsel and on the brief).

PER CURIAM

This appeal in a contract dispute between two small businesses arises from the trial court's ruling that the written (but only partially executed) agreement between the parties lacked an arbitration provision that is enforceable.

The facts relevant to this appeal are as follows. Plaintiff Cape May Seashore Lines, Inc. ("Cape May") is a railroad company that, in mid-2023, entered into negotiations with defendants Pro-Spec Painting Corporation ("Pro-Spec") and its president, Ronald W. Yarbrough, regarding the painting of one of Cape May's locomotives. The parties had a limited previous business relationship with each other, dating back to at least April 2021.

Between August and September 2023, Cape May and Pro-Spec exchanged emails outlining the scope of the painting work to be completed by Pro-Spec for the present project. On September 1, 2023, Pro-Spec sent Cape May a document entitled "Proposal and Agreement Between Contractor and Owner" for Cape May's president's signature ("the 2023 agreement").

The 2023 agreement was drafted by Pro-Spec, which, unlike Cape May, was represented by counsel in this transaction. Of most relevance to the current appeal, a signature block was included on the third page of the drafted agreement. Meanwhile, a completely separate signature block was presented on

A-1113-24

the agreement's final page, directly below a section titled "ARTICLE 13 Arbitration."

Cape May returned the 2023 agreement to Pro-Spec on September 22, 2023. Crucially, Cape May's president signed the third page of the agreement, but he failed to sign the last page that included the pertinent arbitration provision. We also note that the proposed agreement inexplicably contains several stray pages from a separate document, represented by defendants' counsel at oral argument before the trial court to be an "estimate and proposal" for the work to be completed by Pro-Spec, which had been interjected seemingly at random places throughout the agreement.

When a dispute later arose between the parties, Cape May filed suit against Pro-Spec in the Law Division for breach of contract. Pro-Spec then moved to compel Cape May to participate in arbitration. In response, Cape May denied that a written and signed arbitration agreement between the parties existed.

On November 15, 2024, the Law Division judge issued an oral opinion directly following the completion of oral argument, without the taking of any testimony. The judge concluded that the parties' dispute was not subject to an enforceable arbitration provision.

The judge emphasized in his oral opinion that the 2023 agreement lacked clear and unequivocal evidence that Cape May had accepted the arbitration clause, especially since the signature line on the relevant page concerning arbitration was unsigned. Additionally, the judge determined that an identical arbitration provision appearing in the parties' earlier 2021 agreement was not controlling, and that Cape May's transmission of a check with the signed 2023 agreement did not constitute a waiver of its right to litigate disputes in court.

This appeal by Pro Spec followed. In essence, Pro-Spec contends that the judge erred in refusing to compel arbitration, and that there are sufficient indicia of a "meeting of the minds" to conclude that Cape May agreed to take part in binding arbitration and waive its right to a Superior Court trial.

Our review is guided by familiar principles. When deciding whether parties have agreed to arbitrate a dispute and waive their rights to a trial, courts generally "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Kernahan v. Home Warranty Adm'r of Fla, Inc., 236 N.J. 301, 307 (2019). Furthermore, "[d]e novo review applies when appellate courts review determinations about the enforceability of contracts, including arbitration agreements." Kernahan, 236 N.J. at 316 (citing Hirsch v. Amper Fin. Servs.,

LLC, 215 N.J. 174, 186 (2013)).

"Whether a contractual arbitration provision is enforceable is a question of law, and [appellate courts] need not defer to the interpretive analysis of the trial [court]" unless the appellate court finds the trial court's holding, and the reasoning underlying its holding, to be persuasive. Ibid. (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016)). However, in instances where there is mutual assent, courts are to be mindful "of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186.

Here, the 2023 agreement drafted by Pro-Spec was designed to explicitly memorialize the assent of Cape May to submit to binding arbitration if a dispute arose between them. The juxtaposition of the arbitration clause on page seven with the signature line for Cape May immediately below that clause reflects a manifest objective to make certain that Cape May understood it was waiving its right to litigate a dispute in court.

As the drafter of the contract, Pro-Spec is presumed to bear the risk of any ambiguity in its contents or layout. Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). But despite structuring the contract to provide a signature line in close proximity to the

A-1113-24

arbitration clause, Pro-Spec was inattentive to the absence of that signature when the contract was returned to it by Cape May.

We recognize that traditional elements of an enforceable agreement between the parties appear to be present, such as an offer to provide painting services, acceptance of that offer to do the work, price, and valid consideration. See Smith v. SBC Commc'ns., Inc., 178 N.J. 265, 283 (2004) (reciting the traditional elements of contract formation). We therefore conclude, as a general matter, that an agreement of some sort between the parties to perform painting services in exchange for payment did exist.

Even so, we concur with the trial judge's sound determination that the partially signed document was inadequate to prove mutual assent to submit to binding arbitration. See NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424-25 (App. Div. 2011) (underscoring the importance of clear proof of a mutual assent to arbitrate). The failure of Pro-Spec to ensure that the document it drafted was signed appropriately by the other side of the transaction should not be overlooked. Additionally, the irregular manner in which the contract documents were assembled further detracts from the integrity and reliability of the instrument, thereby increasing judicial reluctance to enforce the arbitration clause on the unsigned page within it.

6

Although we need not and do not reach the issue definitively, the documents and circumstances here also are potentially non-compliant with the requirements set forth in Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430 (2014), mandating clear assent to arbitrate and waive the right to trial. In Atalese, our Supreme Court stressed that, in order to bind a party to submit to arbitration, a written agreement must be sufficiently clear that a party is waiving its right to trial and electing to be bound by arbitration. Id. at 444. In the present case, those requirements arguably were not met.

That said, we need not decide here whether the small businesses who were parties to this painting contract—neither of whom was an employee or an individual consumer—were within the zone of "sophisticated" contracting parties exempt from the requirements of Atalese. Cnty of Passaic v. Horizon Healthcare Servs, Inc., 474 N.J. Super. 498, 504 (App. Div. 2023) (holding that "an express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power"). In any event, we simply observe there is at least a substantial question as to whether the strictures of Atalese were met here, assuming, without deciding, that the case and its progeny apply.

A-1113-24

The trial court's order denying Pro-Spec's motion to compel arbitration is consequently affirmed. The case is remanded to the trial court for litigation of the merits. We do not retain jurisdiction.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

8