**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1405-23

EVOLUTION CONSTRUCTION,
LLC,

     Plaintiff-Respondent,

v.

FINOMUS ORANGE RE HOLDINGS,
LLC, FINOMUS EAST BRUNSWICK
RE HOLDINGS, LLC, YUM & CHILL
ORANGE TB, LLC, YUM & CHILL
MANAGEMENT, LLC, and YUM &
CHILL EAST BRUNSWICK, TB, LLC,

     Defendants-Appellants.

_____

Submitted May 15, 2025 – Decided July 16, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0522-18.

Scarinci & Hollenbeck, LLC, attorneys for appellants (Joel N. Kreizman, of counsel and on the brief).

McHugh and Brancato, LLP, attorneys for respondent (Mark J. Brancato, on the brief).

PER CURIAM

On December 14, 2023, after an eight-day bench trial, the court entered judgment in favor of plaintiff Evolution Construction, LLC, after it determined defendants Finomus Orange RE Holdings, LLC (Finomus Orange), and Finomus East Brunswick RE Holdings, LLC (Finomus East Brunswick), breached two contracts for the construction of fast-food restaurants. It also rejected and accordingly dismissed defendants Finomus Orange's, Finomus East Brunswick's, Yum and Chill Orange TB, LLC's, Yum and Chill Management, LLC's, and Yum and Chill East Brunswick, TB, LLC's (collectively Yum and Chill Entities) counterclaims sounding in breach of contract. Based upon our review of the record and applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I.

This matter concerns a dispute between the parties regarding the delayed construction of two Taco Bell restaurants in Orange and East Brunswick. In October 2015, plaintiff entered into two construction contracts with Finomus Orange and Finomus East Brunswick to build the restaurants. Under both contracts, plaintiff had ninety days to complete construction and turn the

properties over to defendants. Plaintiff was to be paid $800,000 to construct the Orange restaurant, and $780,000 for the East Brunswick location.

With respect to the Orange contract, two blank lines appeared where the date of commencement and "outside date for substantial completion and turnover" were supposed to be completed. As to the East Brunswick contract, the date of commencement was designated as October 12, 2015, and "the outside date for substantial completion and turnover" was January 9, 2016. Save for these differences and the project locations, the two contracts were otherwise identical.

As relevant here, Article 9 addressed issues pertaining to timing and delays. Article 9.1 provided "time [was] of the essence" and stated plaintiff would be liable to defendants "for all damages resulting from [plaintiff's] failure to commence or complete the [w]ork in accordance with the" ninety-day timeframe. Article 9.2 defined certain circumstances that would toll the ninety-day requirement and grant plaintiff an extension of the contract time:

> In the event construction of the [p]roject or completion of any portion of the [w]ork is unavoidably delayed by (i) extraordinary conditions of weather for the area and time of year, in excess of that normally encountered, (ii) war or national conflicts or the arising there from, (iii) strikes or other labor disruptions beyond the control of [plaintiff] (except the first five . . . working days of any strike or labor disruption), (iv) fires,

3

earthquakes, floods or other natural disasters, the damage from which was beyond the control of [plaintiff], or (v) the acts (including [c]hanges) or omission of [Finomus Orange or Finomus East Brunswick] or its designated representatives, [plaintiff] shall continue to advance the [w]ork as expeditiously as possible. To the extent such unavoidable delays cause a critical delay to the overall completion of the [w]ork, [plaintiff] by [c]hange [o]rder shall be entitled to an extension of the [c]ontract [t]ime in an amount equal to the number of calendar days completion of the [w]ork was actually delayed. However, no extension of the [c]ontract [t]ime shall be granted unless [plaintiff] has delivered to [Finomus Orange or Finomus East Brunswick] a written notice of the cause of the delay with[in] ten . . . days after the commencement of the delay and has demonstrated that such delay was on the critical path of the [c]onstruction [p]rogress [s]chedule.

The contract also provided plaintiff was responsible for obtaining "all licenses, permits, approvals, and certificates," and Finomus Orange and Finomus East Brunswick would not be liable to plaintiff "for any delays in . . . obtaining the building permit." As to payments, Article 17.6.1 required Finomus Orange and Finomus East Brunswick to "make payment to [plaintiff] of all undisputed amounts due and owing [plaintiff] not later than twenty[-]one . . . days following [Finomus Orange's and Finomus East Brunswick's] receipt and acceptance of [plaintiff's] application for payment."

To achieve substantial completion, Article 19.1.1 required plaintiff turn the property over such that it may be fully occupied and "use[d] for the purpose

that the [p]roject was intended." In order to attain final completion, Articles 20.1 and 20.2 required the parties to generate a punch list of work which plaintiff would have ten calendar days to complete. With respect to final payment, the contract provided "the release of the ten percent . . . retainage amount . . . shall be made by [Finomus Orange and Finomus East Brunswick] to [plaintiff] when the [c]ontract and [w]ork required thereunder have been fully performed." Additionally, under the contract, Finomus Orange and Finomus East Brunswick were permitted to "withhold any amounts due [by it] as provided for in th[e c]ontract or which [they] dispute[d were] due [plaintiff]."

Almost immediately after the parties executed the contracts, as we discuss in greater detail below, plaintiff encountered numerous delays with both projects. These delays included, among other things, weather-related issues, prolonged permit-approval processes, and unanticipated issues with the local utility company. As a result, plaintiff did not finish construction of either restaurant within the original ninety-day timeframes.

Due to the delayed construction processes, Finomus Orange and Finomus East Brunswick withheld multiple progress payments and final payments due plaintiff. Because it had not received these payments, plaintiff repudiated its

5

obligation to complete all punch list items and supply defendant with a list of its subcontractors as well as their contact information.

As a result, on April 23, 2018, plaintiff filed a six-count complaint against Finomus Orange and Finomus East Brunswick, alleging breach of contract, unjust enrichment, and money due under a book account. With respect to the Orange contract, plaintiff alleged Finomus Orange owed $124,852.96, plus interest. With respect to the East Brunswick contract, plaintiff claimed Finomus East Brunswick owed $113,916.07, plus interest.

Finomus Orange and Finomus East Brunswick answered, asserted various affirmative defenses, and filed a counterclaim. They alleged plaintiff breached the contracts by failing to complete the projects within ninety-days, and plaintiff failed to "adequately address the punch list items necessary to obtain [certificates] of [o]ccupancy and to ultimately open for business." As a result of these purported breaches, Finomus Orange and Finomus East Brunswick alleged they "incurr[ed] damages in the form of unnecessary carrying charges for mortgage and taxes, payroll expenses[,] and operating expenses in order to complete the project[,] which would not have been incurred but for [p]laintiff's breach of contract."

At trial, plaintiff called as its only witness Vice President of Evolution Construction Georges Chalemin, who first provided testimony with respect to the East Brunswick restaurant. According to Chalemin, plaintiff filed for a demolition permit with East Brunswick on August 3, 2015, approximately two months before the parties executed the contract. East Brunswick approved the permit and, according to Chalemin, demolition began on October 12, 2015. With respect to the building permit, Chalemin testified plaintiff also applied for that permit on August 3, and East Brunswick approved it on November 19, 2015.

Chalemin further explained some work on the property, specifically the front area which required work on the curb and sidewalk, was under the jurisdiction of the New Jersey Department of Transportation (DOT). According to Chalemin, despite initial plans to replace the curb to comply with DOT requirements, Finomus East Brunswick did not want to spend additional money on replacing the curb and asked plaintiff to meet with the DOT and urge them to keep the existing curbing and sidewalks. Chalemin further explained the DOT had a cold weather prohibition period from January 5 to March 15, 2016, where no work was permitted on DOT controlled areas.[1]

_____

[1] Chalemin testified work during this cold weather prohibition period was further delayed by a snowstorm, which made work impossible between January 25 to February 11, 2016.

A-1405-23

Because of the requested deviation from the original plans, the DOT did not issue a permit to complete the work until April 19, 2016, which plaintiff completed the next day. Another deviation from the original plans occurred when the township of East Brunswick required the existing four-inch sewer line be replaced with a six-inch line, resulting in a delay of "a couple of weeks." According to Chalemin, East Brunswick completed final inspections of the property on April 29, 2016, and the certificate of occupancy was issued on May 3.

As to communications between plaintiff and Finomus East Brunswick, Chalemin testified he communicated with Finomus East Brunswick's representative, Nirav Mehta, daily. Chalemin explained plaintiff ultimately did not complete the punch list items associated with the East Brunswick project because defendants were two months behind on their progress payments.

With respect to the Orange location, Chalemin stated plaintiff applied for building and demolition permits in August 2015. While the township approved the demolition permit on February 10, 2016, it did not issue the building permit until March 23.

Chalemin further testified demolition did not commence until March 10, 2016, because a telephone pole had to be removed, and it was unclear to whom

A-1405-23

it belonged. According to Chalemin, work on the property's footings was further delayed by twenty-three days due to "unsuitable soil," which Finomus Orange's soil engineers did not identify in their general recommendations. After remedying the soil issues,[2] and losing another day due to rain, Chalemin explained plaintiff finished the building's footings and had them inspected and approved on April 27, 2016.

Another eight-day delay resulted when an inspector required damp proofing to be installed on the property's foundation, which Finomus Orange did not include in the original plans. Completion of the project was further delayed when Public Service Electric and Gas Company (PSE&G) determined the electrical plans were not suitable, resulting in another six-day delay. PSE&G's failure to install permanent power, which it did not accomplish until September 2016, constituted the final significant delay.

After obtaining a temporary certificate of occupancy on September 19, 2016, Chalemin testified plaintiff turned the property over to Finomus Orange after a final certificate of occupancy was issued by the township on October 7, 2016. Again, Chalemin explained plaintiff did not complete the punch list work because Finomus Orange owed progress payments from August and September

---

[2] Chalemin clarified plaintiff discovered the soil issue on March 30, 2016.

2016, and plaintiff "needed to be paid the final retention before [Chalemin] could get the contractors to go back."

With respect to the East Brunswick location, Chalemin acknowledged that contrary to Article 9.2, plaintiff did not submit any change orders specifically requesting an extension of the contract time. He did, however, state plaintiff provided defendants with written notices of the delays. As to the delayed construction schedules, Chalemin explained plaintiff regularly communicated with Mehta regarding why the projects were behind the ninety-day timeframe set out in the contracts. He further testified neither Finomus East Brunswick nor Finomus Orange ever communicated that plaintiff was in breach of the ninety-day requirement.

Defendants called Mehta as their only witness, who was "one of the [principals] for Finomus." With respect to the East Brunswick project, Mehta claimed no work was done outside the initial scope of approval from the DOT. He did concede, however, Finomus East Brunswick requested a modification to the original plans for the curb under the DOT's control. Further, although Mehta acknowledged he was communicating with Chalemin on a daily basis with respect to the project and associated delays, he testified he expressed his displeasure with the speed of the construction in various communications.

With respect to the Orange location, Mehta clarified Finomus Orange obtained title to the property on October 27, 2015. Additionally, Mehta testified the only notice of delay he received from plaintiff was for one day due to rain.

As to payments to plaintiff, Mehta explained Finomus Orange and Finomus East Brunswick received two construction loans from Valley National Bank and, before any payment could be issued, the bank "would have to come out and inspect th[e] work before they would agree to release" the funds. With respect to payroll expenses incurred as a result of plaintiff's alleged delay, Mehta testified "managers are hired under Yum [and] Chill Management, LLC, and all the hourlies are hired under the operating company for East Brunswick, which is Yum [and] Chill East Brunswick, TB, LLC."

Mehta clarified he and his wife owned both Finomus defendants as well as the Yum and Chill Entities. Because the Yum and Chill Entities had not been made parties to the matter, and neither Finomus Orange nor Finomus East Brunswick were responsible for any payroll expenses, the court held Mehta could not be questioned as to their alleged damages.

With respect to the Orange project, Mehta claimed Finomus Orange sustained $89,678.41 in damages due to real estate taxes and loan interest. As

11

to the East Brunswick location, Mehta asserted Finomus East Brunswick sustained $29,650.71 in damages for the same costs.

At the close of the trial day on October 27, 2020, defendants' counsel made a motion to amend the counterclaim to add the Yum and Chill Entities, and the court reserved its decision. The next day, the court granted defendants' motion to amend the complaint.

After defendants amended their complaint, trial resumed and Mehta testified the Yum and Chill Entities, with respect to the East Brunswick location, sustained $57,571.02 in payroll damages ($41,192.89 in payroll expenses to hourly employees, and $16,378.14 in payroll expenses to management employees). As to the Orange location, Mehta explained the Yum and Chill Entities incurred $85,476.50 in payroll damages ($49,292.35 in payroll expenses to hourly employees, and $36,083.45 in payroll expenses to management employees).

After considering the trial testimony and documentary evidence, on October 6, 2023, the court issued a written opinion in which it found Finomus Orange and Finomus East Brunswick liable for breach of contract, awarded plaintiff attorney's fees, dismissed all parties' counterclaims, and issued a corresponding order of judgment on December 14, 2023. With respect to

12

plaintiff's claims regarding the East Brunswick project, the court initially addressed the issue of whether plaintiff was entitled to extensions for the various delays. Although plaintiff did not submit into evidence any written notices of the delays, as required by Article 9.2, the court noted Mehta "received daily written updates from plaintiff regarding the construction schedule in the [d]aily [j]ob [r]eports." The court found these written reports met the delay requirement such that plaintiff was entitled to extend the contract time under Article 9.2.

As to these delays, the court found plaintiff was entitled to the following extensions of the contract time: (1) twenty-one days for the building permit that East Brunswick did not issue until November 19, 2015; (2) fourteen days due to the sewer line issue; (3) eight days for the damp proofing work; and (4) 103 days for the DOT delay. In light of these extensions, the court concluded substantial completion of the East Brunswick restaurant was required by June 12, 2016. Because East Brunswick issued the certificate of occupancy on May 3, 2016, the court found plaintiff achieved substantial completion on that date.

Therefore, the court found "there was no breach of contract time by plaintiff in the construction of the East Brunswick . . . restaurant." Although it found plaintiff committed a "minor breach" when it failed to complete the punch list items, the court concluded "there was a major breach of contract by

defendant Finomus East Brunswick . . . when it failed to pay plaintiff after [twenty-one] days of receipt of the bill for the contract and change orders less the [ten percent] retainage."

The court further found Finomus East Brunswick violated N.J.S.A. 2A:30A-2(a) "for failing to pay plaintiff within [thirty] days of receipt of the bill" because Finomus "did not provide any writing to . . . plaintiff indicating why it was not paying the bill less retainage." Accordingly, the court found plaintiff was "entitled to interest at a rate of prime plus [one percent] from May 3, 2016[,] until the bill is paid," in addition to attorney's fees and costs under N.J.S.A. 2A:30A-2(e). It further concluded Finomus East Brunswick was not entitled to a credit for plaintiff's failure to complete the punch list because it "provided no proof of the cost of completing" the work.

With respect to the change orders at the East Brunswick location, the court found plaintiff was entitled to compensation as to all the change orders because they were either requested by Finomus East Brunswick or required by East Brunswick itself. Accordingly, the court "enter[ed] judgment on behalf of [plaintiff], for the East Brunswick Taco Bell restaurant contract against Finomus East Brunswick RE [H]oldings[,] LLC[,] in the amount of $113,916.07," plus

14

interest, as well as "reasonable counsel fees plus costs." The court further dismissed with prejudice Finomus East Brunswick's counterclaim.

As to plaintiff's claims concerning the Orange location, the court began by noting the original ninety-day contract time for substantial completion was January 26, 2016. It found plaintiff was entitled to the following extensions of the contract time: (1) an extension to March 23, 2016, when Orange issued the building permit; (2) a twenty-three-day extension due to the soil issue; (3) an eight-day extension due to the damp proofing work; and (4) an unspecified extension due to the issues with PSE&G. Accordingly, the court found plaintiff was required to achieve substantial completion by September 19, 2016. Because Orange issued a temporary certificate of occupancy on that date, the court found plaintiff had achieved substantial completion and "there was no breach of the [ninety-]day time is of the essence clause in [Article] 9.1 by plaintiff."

The court further found "a major breach of contract by [Finomus Orange] in not paying plaintiff for the remainder of the contract plus change orders." Again, the court found Finomus Orange was responsible for all the change orders and violated N.J.S.A. 2A:30A-2(a). Consequently, it "enter[ed] judgment on behalf of [plaintiff] for the Orange Taco Bell restaurant contract against Finomus Orange RE Holdings, LLC., in the amount of $124,852.96," plus

interest, as well as "reasonable counsel fees plus costs." Additionally, the court dismissed with prejudice Finomus Orange's counterclaim.

Lastly, the court addressed the Yum and Chill Entities' counterclaim for payroll damages. Because they were not parties to the contracts, the court explained their right to damages hinged on whether they were third-party beneficiaries.

Although the Finomus defendants were aware of the Yum and Chill Entities' existence, the court found "plaintiff . . . was totally unaware that some other entity would be paying payroll and would be claiming damages as a result of its failure to meet the time element of the contracts." The court found it could not "conclude that both parties intended the Yum and Chill defendants to be third[-]party beneficiaries of the contract . . . . You [cannot] intend someone to have a benefit from a contract you make with someone else when you are totally unaware of that third party." It accordingly dismissed with prejudice the Yum and Chill Entities' counterclaims.

## II.

Defendants contend the court erred in making a better contract for plaintiff than it made for itself. Specifically, defendants maintain "the [c]ourt overlooked [plaintiff's] failure to follow the requirements of the subject contracts as well as

16

the provisions of the contracts and statute upon which the [c]ourt purportedly based its draconian award." With respect to the contracts and N.J.S.A. 2A:30A-2, defendants argue prompt payment was not required because "there was ample evidence that the [w]ork was not going to be completed within the [c]ontract [t]ime." Further, defendants assert they "had a right to withhold a [ten percent] retainage until all work, including the remedying of [punch list] work, was completed."

Additionally, defendants maintain the court erred in granting plaintiff multiple delay extensions. First, they contend plaintiff was not entitled to any extensions because it did not submit any written requests pursuant to Article 9.2. Second, defendants argue none of Article 9.2's bases for an extension "concern delays by a municipal building department, a public utility[,] or an agency of the State of New Jersey." Further, because the contracts imposed upon plaintiff the obligation to obtain all licenses and permits, defendants argue the court should not "have relieved [plaintiff] of its responsibilities." They maintain "the [c]ourt had no business, on its own, to essentially render the time of the essence provision in the contracts, which was not only negotiated but was quite obviously of prime importance to [defendants], a nullity."

17

Defendants further argue plaintiff breached two additional provisions of the contract: completing the punch list work and providing defendants with information regarding its subcontractors. Defendants contend the court erred in finding "that the [punch list] work was a minor provision and that the [defendants'] failure to pay [plaintiff's] last invoice for East Brunswick excused [plaintiff] from its [punch list] obligations." In so finding, they maintain the court failed to consider that defendants "paid all previous pay requests, had a right to dispute change order requests, had a right to retainage, and had a right to withhold funds based on [plaintiff's] utter failure to abide by the contracts' time of the essence requirements and the concomitant right to reduce payments to [plaintiff]."

When reviewing a decision in a non-jury trial matter, we "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Seidman v. Clifton Sav.

Bank, SLA, 205 N.J. 150, 169 (2011) (second alteration in original) (quoting In re Trust Created by Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)).  In reviewing the judge's findings, this court "do[es] not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence."  Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).  We owe no deference, however, to the judge's interpretation of the law and the legal consequences that flow from established facts.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

At the appellate level, "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review."  Fastenberg v. Prudential Ins. Co., 309 N.J. Super. 415, 420 (App. Div. 1998) (citing Bradford v. Kupper Assocs., 283 N.J. Super. 556, 583 (App. Div. 1995)).  We decide such purely legal questions without deferring to a lower court's "interpretation of the law and the legal consequences that flow from established facts."  Manalapan Realty, 140 N.J. at 378 (citing State v. Brown, 118 N.J. 595, 604 (1990)); see also Zaman v. Felton, 219 N.J. 199, 216 (2014).

When interpreting a contract, the court should consider the plain language of the contract, the circumstances surrounding the contract, and the contract's

purpose. Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115-16 (2006). "[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction[,] and the courts must enforce those terms as written." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)). Courts should not "rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (citing Sacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

To establish a claim for breach of contract, a plaintiff must prove (1) they had a valid contract; (2) they did what the contract required them to do; (3) the defendant failed to perform a defined obligation under the contract; and (4) defendant's breach caused a loss to plaintiff. Goldfarb v. Solimine, 245 N.J. 326, 338 (2021). Pursuant to general contract principles, if one party commits a "breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement. . . . [A] breach is material if it 'goes to the essence of the contract.'" Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (first quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990); and then quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)).

Whether a breach is material is a question of fact. <u>Chance v. McCann</u>, 405 N.J. Super. 547, 566 (App. Div. 2009).

At the outset, defendants have not specifically challenged the court's determination that the Yum and Chill Entities were not third-party beneficiaries to the contracts, and we therefore consider any appeal of that finding waived. <u>See</u> <u>Telebright Corp., Inc. v. Dir., N.J. Div. of Tax'n</u>, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief). Regardless, the court correctly concluded the Yum and Chill Entities could not have been third-party beneficiaries of either contract because there was no evidence plaintiff was aware of their existence when entering the agreements. <u>See</u> <u>Ross v. Lowitz</u>, 222 N.J. 494, 514 (2015) (explaining "a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement").

Additionally, in the preliminary statement to defendants' merits brief and in their reply brief which the Appellate Clerk rejected, defendants summarily challenge the court's decision to award plaintiff attorney's fees under N.J.S.A. 2A:30A-2. We decline to consider defendants' argument on both procedural and substantive grounds. Procedurally, we decline to address the issue because we

only consider legal arguments set forth in the argument portion of a brief and raised in point headings. Almog v. Israel Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997) ("[W]e confine our address of the issues to those arguments properly made under appropriate point headings."). Further, even if defendants' reply brief was not rejected, we would not have considered their argument on this point because, as noted, they did not properly raise the issue in their merits brief and it is also not proper to raise the issue for the first time in a reply brief. See Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) (stating "[r]aising an issue for the first time in a reply brief is improper"). Substantively, defendants' argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

With respect to the East Brunswick contract, we are convinced the court appropriately found plaintiff did not breach the time of the essence clause and that Finomus East Brunswick committed "a major breach of contract . . . when it failed to pay plaintiff after [twenty-one] days of receipt of the bill for the contract and change orders less the [ten percent] retainage." We are unpersuaded by defendants' argument plaintiff was not entitled to any extensions of the contract time because it failed to submit written notices pursuant to Article

9.2. As noted, to be entitled to an extension of the contract time due to an unavoidable delay, plaintiff was required to deliver to Finomus East Brunswick "a written notice of the cause of the delay with[in] ten . . . days after the commencement of the delay and . . . demonstrate[] that such delay was on the critical path of the [c]onstruction [p]rogress [s]chedule."

Here, we discern no error in the court's decision plaintiff satisfied this requirement by submitting written daily job reports. These written daily job reports clearly satisfy Article 9.2's requirement that plaintiff submit "a written notice of the cause of the delay with[in] ten . . . days." Additionally, because defendants have failed to include these reports in the appellate record, we have no reason to question the court's conclusion they also satisfied Article 9.2's requirement that plaintiff demonstrate the delays were "on the critical path of the [c]onstruction [p]rogress [s]chedule." See R. 2:6-1(a)(1)(I) (explaining an appellant must include in the appendix "such other parts of the record . . . as are essential to the proper consideration of the issues"); see also State v. Robertson, 438 N.J. Super. 47, 56 n.4 (App. Div. 2014) ("We obviously cannot address documents not included in the record.").

We are similarly unconvinced by defendants' argument plaintiff was not entitled to any extensions of the contract time because none of Article 9.2's bases

for an extension "concern delays by a municipal building department, a public utility[,] or an agency of the State of New Jersey." As noted, the court found plaintiff was entitled to the following extensions with respect to the East Brunswick contract: (1) twenty-one days for the delayed building permit; (2) fourteen days due to the sewer line issue; (3) eight days for the damp proofing work; and (4) 103 days for the DOT delay.

Although the court did not explain which provisions in Article 9.2 excused these delays, we are satisfied all the delays, save for the building permit issue, are excused as they were occasioned by "the acts (including [c]hanges) or omission[s]" of Finomus East Brunswick. As noted, the fourteen-day delay due to the sewer line issue and the eight-day delay for damp proofing work were caused by Finomus East Brunswick's "omission" to include this work in the original plans. Additionally, Finomus East Brunswick created the DOT delay by requesting that plaintiff urge the DOT to keep the existing sidewalks and curbing. Because the contract required plaintiff to obtain all permits, however, we are convinced it was not entitled to this twenty-one-day extension.

Therefore, plaintiff was entitled to extend the contract time by 125 days. Because the effective date of the East Brunswick contract was October 16, 2015, without any delays plaintiff was required to complete the work by January 14,

2016. With the 125-day extension, the revised completion date was May 18, 2016. As the court found plaintiff achieved substantial completion on May 3, 2016, it correctly concluded plaintiff did not breach the contract's time of the essence clause.

Additionally, the court did not, as defendants contend, "err[] in failing to require [plaintiff] to abide by its contractual obligations." Here, the court found Finomus East Brunswick committed "a major breach of contract . . . when it failed to pay plaintiff after [twenty-one] days of receipt of the bill for the contract and change orders less the [ten percent] retainage." As noted, it also concluded plaintiff committed "a minor breach of contract when [it] failed to complete the punch list." Because the court found as fact that Finomus East Brunswick breached a material term of the contracts, see Chance, 405 N.J. Super. at 566, plaintiff was entitled to suspend performance and was not obligated to correct the punch list items or provide information regarding its subcontractors, see Roach, 228 N.J. 163 at 174.

Lastly, we reject defendants' argument prompt payment was not required because "there was ample evidence that the [w]ork was not going to be completed within the [c]ontract [t]ime." Although the contracts do permit defendants to withhold payments based upon "[r]easonable evidence that the

[w]ork will not be completed within the [c]ontract [t]ime," as noted above, plaintiff did complete the work within the extended timeframe. As such, defendants had no basis to withhold payments based upon their belief plaintiff would not complete the work within the contract's original timeframe. We therefore affirm the court's December 14, 2023 order of judgment to the extent it found Finomus East Brunswick liable for breach of contract and dismissed its counterclaim.

We reach a different conclusion, however, with respect to the court's findings regarding the Orange project. As noted, the court found plaintiff was entitled to the following extensions of the contract time: (1) an extension to March 23, 2016, when Orange issued the building permit; (2) a twenty-three-day extension due to the soil issue; (3) an eight day extension due to the damp proofing work; and (4) an unspecified extension due to the issues with PSE&G.

Unlike the delays associated with the East Brunswick location, the most significant delays plaintiff encountered at the Orange project were not excusable under Article 9.2. Specifically, neither the delays associated with PSE&G nor Orange's protracted delay in issuing the building permit qualify as "acts (including [c]hanges) or omission[s]" of Finomus Orange, nor do those delays fall within any of the other four circumstances in which a delay would toll the

contract time under Article 9.2.[3]  The only delays that are excusable under Article 9.2 are the twenty-three and eight-day delays caused by work Finomus Orange omitted in the original plans.  As a result, plaintiff was entitled to extend the contract time by thirty-one days.

Here, the court found the contract time began on October 27, 2015, when Finomus Orange obtained title to the property.  Accordingly, the original date for substantial completion was January 26, 2016.  With the thirty-one-day extension, plaintiff was required to achieve substantial completion by February 26, 2016.  Because the court found plaintiff achieved substantial completion on September 19, 2016, plaintiff did not complete the project within the extended ninety-day timeframe.

Our analysis, however, does not end there.  It is well-established

> [w]here time of performance is of the essence of the
> contract, a party who does any act inconsistent with the
> supposition that [they] continue[] to hold the other
> party to [their] part of the agreement will be taken to
> have waived it altogether.  When a specific time is fixed
> for the performance of a contract and is of the essence
> of the contract and it is not performed by that time, but

---

[3] We recognize the Orange contract incorporated a letter of intent which stated, in part, the "construction timeline would be [ninety] days from the date of receipt of building permits or date of [plaintiff's] mobilization, whichever is earlier." Even assuming this letter delayed the beginning of the ninety-day construction timeline to March 23, 2016, plaintiff still would have been required to complete the work by June 21.

the parties proceed with the performance of it after that time, the right to suddenly insist upon a forfeiture for failure to perform within the specified time will be deemed to have been waived[,] and the time for performance will be deemed to have been extended for a reasonable time.

[Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 608 (App. Div. 2005) (quoting 15 Williston on Contracts § 46:14 (Lord ed. 2002)).]

Here, it appears evidence in the record may support finding Finomus Orange waived the time of the essence clause and, therefore, waived any right they may have had to insist upon the consequences of plaintiff's failure to abide by the time of the essence clause. By way of example only, the ninety-day timeframe originally contemplated in the Orange contract lapsed on January 26, 2016. Aside from Mehta's testimony he communicated to Chalemin his displeasure with the speed of the project, there is no evidence Finomus Orange advised plaintiff it was in breach of the time of the essence clause. Further, Finomus Orange allowed plaintiff to complete the project and obtain a certificate of occupancy before it ever raised the issue.

Neither the court nor the parties, however, addressed the issue of waiver. Because the record would benefit from more specific factual and legal findings, we decline to exercise original jurisdiction on this point and conclude the court should address the issue in the first instance and, if necessary, provide the parties

with an opportunity to brief and be heard on the matter. See Price v. Himeji, LLC, 214 N.J. 263, 294 (2013).

If on remand the court concludes Finomus Orange waived the time of the essence clause, the court may reinstate plaintiff's damages award, including the attorney's fee award under N.J.S.A. 2A:30A-2. To the extent the court does not find waiver, however, it shall examine the proofs in light of plaintiff's alternative claims for relief and determine whether or not defendants are entitled to damages with respect to Finomus Orange's claim they incurred unnecessary carrying charges as a result of plaintiff's breach of the time of the essence clause, and determine the amount of damages associated with that breach. We therefore remand for the court to make findings consistent with Rule 1:7-4 as to whether Finomus Orange waived the time of the essence clause.

In sum, we affirm the December 14, 2023 order of judgment as to Finomus East Brunswick. We reverse the December 14 order to the extent the court found Finomus Orange liable and remand for further proceedings to address the issue of waiver. Nothing in our opinion should be construed as suggesting our view on the outcome of the remanded proceedings. To the extent we have not addressed specifically any of defendants' remaining arguments, it is because we

have concluded they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division