**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1401-24

ALBERTO CABRERA,

    Plaintiff-Respondent/Cross-
    Appellant,

v.

TOWN OF GUTTENBERG,

    Defendant-Appellant/Cross-
    Respondent.

_____

        Argued November 19, 2025 – Decided February 4, 2026

        Before Judges Paganelli and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0786-23.

        Nicholas Wall argued the cause for appellant/cross-respondent (Weiner Law Group LLP, attorneys; Stephen J. Edelstein, on the briefs).

        Christopher P. Kelly argued the cause for respondent/cross-appellant (Reppert Kelly & Vytell, LLC, attorneys; Christopher P. Kelly, on the brief).

PER CURIAM

Defendant Town of Guttenberg (Guttenberg) appeals from a trial court order denying its motion for summary judgment and granting plaintiff's, Alberto Cabrera's, cross-motion for summary judgment. We affirm that aspect of the court's December 19, 2024 order.

Plaintiff cross-appeals from that same order denying his request for the award of attorney's fees and costs. Because the trial court failed to provide reasons for the denial of plaintiff's request, we vacate that part of the order and remand the matter for further proceedings.

I.

We glean the undisputed facts from the record. Plaintiff was employed by Guttenberg as its municipal clerk.[1] The parties mutually agreed to terminate their employment relationship and memorialized their understanding in a "Separation Agreement and General Release" (Agreement). Plaintiff signed the Agreement on August 18, 2022. As relevant to the issues on appeal, the Agreement provides:

> WHEREAS [plaintiff] requested a personal leave of absence with pay for the period beginning August 18, 2022[,] and ending at the close of business on March 31, 2023; and

---

[1] N.J.S.A. 40A:9-133(a) provides "[i]n every municipality there shall be a municipal clerk . . . ." The statute also lists the municipal clerk's responsibilities. See N.J.S.A. 40A:9-133(e)(1)-(7).

WHEREAS, [plaintiff] has stated that he will retire effective March 31, 2023[,] and shall retire from all employment with . . . [Guttenberg] at the close of business on March 31, 2023, upon satisfaction of certain terms and conditions to be stipulated in this Agreement; and

NOW, THEREFORE, . . . [Guttenberg] and [plaintiff] acknowledge that [plaintiff] shall no longer be employed by . . . [Guttenberg] effective midnight March 31, 2023 ("Separation Date"). To amicably resolve this transition and fully and finally resolve any and all issues in connection with [h]is employment and [h]is separation from employment, the [p]arties mutually agree as follows:

1. [Guttenberg] shall maintain [plaintiff] on [it]s payroll through March 31, 2023. In addition, . . . [Guttenberg]: shall pay [plaintiff] for his unused accrued vacation, sick, compensatory, and personal days for 2022 and 2023 (for a total of 53 total days, comprised of 16 sick days, 21 vacation days, 3 personal days and 12 compensatory days) ("Separation Payment") . . . . The Separation Payment . . . shall be paid in accordance with . . . [Guttenberg]'s usual and customary payroll cycle (in March of 2023) . . . . If this Agreement is timely signed and returned to . . . [Guttenberg], the Separation Payment will be on the first payroll date . . . .

2. In return for full compliance with this Agreement . . . [plaintiff] agrees to sign an irrevocable letter of retirement from all employment with . . . [Guttenberg], to be effective at the close of business on March 31, 2023 . . . , which shall be in the form acceptable

3

to both parties . . . . [Guttenberg] shall, . . . accept [plaintiff]'s retirement . . . . Said retirement is effective only upon the full terms and conditions of the Agreement being accepted by . . . [Guttenberg] and is only then binding upon the parties and irrevocable and is not subject to modification or rescission. [Plaintiff] agrees that, upon the execution of this Agreement and as a result of his retirement, [h]e shall forfeit all tenure rights [h]e has to any position with . . . [Guttenberg], up until the date of this Agreement.

3. [Plaintiff]'s medical benefits, if applicable, pursuant to [Guttenberg]'s medical plan, shall terminate at midnight on March 31, 2023, and [plaintiff] shall thereafter be entitled to continue to participate in the medical plan, at his sole cost and expense, pursuant to his rights under COBRA, or the New Jersey state corollary. All other benefits of employment shall terminate as of the Separation Date . . . .

4. [Plaintiff] understands and agrees that [h]e will receive the Separation Payment only if [h]e signs this Agreement agreeing to its terms, returns it to . . . [Guttenberg], and does not revoke [h]is consent to the Agreement. [Plaintiff] will not be entitled to receive this Separation Payment until after . . . [Guttenberg] receives [h]is signed Agreement and [h]is letter of retirement . . . .

. . . .

5(c) This Release also includes all . . . [c]laims . . . arising out of or related to [plaintiff]'s employment with or [h]is separation from employment with . . . [Guttenberg].

4

. . . .

5(e) This Release shall not bar any [c]laim [plaintiff] may file to enforce the terms of this Agreement.

. . . .

7.  [Plaintiff] shall submit a written request for a paid personal leave of absence from August 18, 2022[,] through the close of business on March 31, 2023, which shall be submitted no later than noon on August 22, 2022.  [Plaintiff] shall not have any professional responsibilities as a [Guttenberg] employee during his paid leave of absence.  .  .  .  [Guttenberg] shall accept [plaintiff]'s personal leave of absence at its next scheduled meeting.

8.  The parties mutually agree that both parties will have limited contact (not business related) with each other and that [plaintiff] shall not communicate with any [Guttenberg p]arties regarding the subject matter of this Agreement, his leave of absence[,] or his retirement.

. . . .

13.  [Plaintiff] agrees not to reapply for and shall not be eligible for employment or reemployment with  .  .  .  [Guttenberg], and [h]e further understands and agrees that if . . . [Guttenberg] receives an application or inquiry from [h]im regarding employment, it may reject such application or inquiry without taking any action and this Agreement shall act as a complete bar to any claim based on failure to hire [h]im.

A-1401-24

. . . .

16. . . . . The parties agree that any questions regarding the interpretation of language of this Agreement shall be interpreted without regard to which party may have prepared them.

. . . .

18. This Agreement contains the complete understanding between . . . [Guttenberg] and [plaintiff], and no other promises or agreements shall be binding unless signed by both [p]arties. In signing this Agreement, the [p]arties are not relying on any fact, statement[,] or assumption not set forth in this Agreement.

On the same day he signed the Agreement, plaintiff provided a handwritten letter, addressed to the Mayor and Council, stating: "I am requesting a paid leave of absence from August 18, 2022 to March 31, 2023." In addition, plaintiff provided a separate letter to the same recipients stating in part: "Please accept this letter as my official retirement date of March 31, 2023."

On August 22, 2022, Guttenberg's Mayor and Council voted to ratify the Agreement. Further, Guttenberg "accepted" plaintiff's retirement request and "approved" his leave of absence. At the same meeting, it passed a resolution noting its clerk was "on leave" and it appointed an "acting" clerk to serve during the leave. The acting clerk's appointment was effective August 23, 2022.

6

From September 2022 through December 2022, Guttenberg provided plaintiff with "personal-leave paychecks." On December 20, 2022, plaintiff emailed Guttenberg's attorneys stating:

> I would like to amend the [Agreement] between myself and . . . Guttenberg as follows:
>
> 1. Change the retirement date from March 31, 2023[,] to December 31, 2022.
>
> 2. The payout as agreed in item number 1 – for the full 53 days of vacation, sick time, and personal time.
>
> 3. My last official day on . . . Guttenberg['s] payroll will be December 31, 2022, midnight. I agree to forgo my salary payments from January 1, 2023 – March 31, 2023.

The next day, counsel responded:

> Please be advised that you and . . . Guttenberg have a binding contract in which you are on a paid leave of absence until March 31, 2023 (and remain on the . . . payroll and accrue pension credit), at which point you are deemed to have resigned. To the extent that you wish to revise the agreement such that your leave shall end on December 31, 2022 (so that you can be employed at another municipality), that is agreeable . . . except that you shall forfeit all 2023 time as you will no longer be employed by . . . [Guttenberg] and . . . [Guttenberg] will owe you nothing more under the [A]greement the parties executed. Your other option is to not revise the contract and wait to accept employment until your employment with . . . [Guttenberg] ends on March 31, 2023.

7

Please advise how you wish to proceed.

The parties did not "amend" or "revise" the Agreement. In January 2023, plaintiff commenced employment with the Township of Belleville (Belleville) as its municipal clerk. As a result, Guttenberg "stopped paying [plaintiff] his bi-weekly salary." Plaintiff did not receive personal-leave paychecks for the period of January through March 31, 2023.

On or about February 15, 2023, Guttenberg issued a personal-leave paycheck purporting to be "for [plaintiff's] remaining leave time for the year 2022." Plaintiff claims he did not receive the check until late December 2023 or early January 2024. Plaintiff claims he did not cash or deposit the check because "it was nearly a year past its 'issue date'" and was less than what he was owed.

In March 2023, plaintiff filed a one-count complaint against Guttenberg. Plaintiff alleged breach of contract, claiming he had fully complied with the parties' Agreement by submitting a "written request for leave of absence and irrevocable letter of retirement, and by refraining from performing any further professional duties for" Guttenberg. He asserted Guttenberg was in breach of the Agreement because it failed to make the "Separation Payment" and ceased "to maintain [him] on its payroll after December 31, 2022."

A-1401-24

## II.

In deciding the parties' motions for summary judgment, the court stated:

> There are no provisions in the . . . Agreement which require [p]laintiff to cease employment entirely. Rather, the agreement only requires [p]laintiff to cease employment with . . . Guttenberg and to waive all causes of action against [it] in exchange for the compensation package. Nowhere does it say in the [A]greement [p]laintiff cannot begin new employment during the leave period where he [w]as essentially . . . relieved of his duties in . . . Guttenberg. In addition, [Guttenberg] has failed to put forth any case law to support [it]s assertion that agreements such as the one before the [c]ourt bar employees from commencing new employment.

> Viewing the facts in the light most favorable to the non-moving party, [Guttenberg] ha[s] failed to prove their case as a matter of law and no reasonable fact finder could find that [p]laintiff is not entitled to the remaining sum of the . . . Agreement. For these reasons, plus the reasons set forth on the record during oral argument on September 4, 2024, [Guttenberg]'s motion for summary judgment is DENIED and [p]laintiff's cross-motion has been GRANTED.[2]

Guttenberg contends the court erred in denying its motion for summary judgment and granting plaintiff's cross-motion for summary judgment. It argues plaintiff did not establish that he "did what he was required to do under the . . . Agreement []or that Guttenberg failed to perform its obligations under the . . .

---

[2] The parties have not provided the transcript from the hearing on the motions.

A-1401-24

Agreement[]." Guttenberg argues plaintiff materially breached the Agreement, and therefore it is excused from any remaining performance obligation under the Agreement. Moreover, Guttenberg argues plaintiff failed to establish any damages as a result of its lack of performance because of his salary and accrual of "paid time off" benefits from Belleville.

Appellate courts review an order granting "summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A court must grant summary judgment when "reviewing 'the competent evidential materials submitted by the parties,'" viewed in the light most favorable to the non-moving party, "'there are no genuine issues of material fact . . . the moving party is entitled to summary judgment as a matter of law.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); R. 4:46-2(c).

In determining whether a genuine issue of material fact exists, we "must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). We do not "weigh the evidence and determine the truth of the matter but . . . determine whether there is a genuine issue for trial." Rios v. Meda Pharm., Inc., 247 N.J.

1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). No genuine issue of material fact exists where the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"Where there is no material fact in dispute . . . '[an appellate court] must then decide whether the trial court correctly interpreted the law.'" N.J. Realtors v. Twp. of Berkeley, 479 N.J. Super. 379, 391 (App. Div. 2024) (quoting DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013)) (internal quotation marks omitted).

"A settlement agreement between parties . . . is a contract." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Nolan v. Lee Ho., 120 N.J. 465, 472 (1990)). "Because contract interpretation is a question of law we review de novo, we 'pay no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., 258 N.J. 286, 303 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so

would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "[U]nambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Leonard & Butler, P.C. v. Harris, 279 N.J. Super. 659, 671 (App. Div. 1995)).

The "court's task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co., 225 N.J. at 483 (quoting Kieffer, 205 N.J. at 223). "It is well-settled that '[c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" In re County of Atlantic, 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent, 217 N.J. at 99) (internal quotation marks omitted).

"A party violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019). Further,

> [t]o prevail on a claim of breach of contract,
>
>> [New Jersey] law imposes on a plaintiff the burden to prove four elements: first, that

A-1401-24

the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

[Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (quoting Globe Motor Co., 225 N.J. at 482) (internal quotation marks omitted).]

"In the event of a 'breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.'" Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Nolan, 120 N.J. at 472). "[A] breach is material if it 'goes to the essence of the contract.'" Ibid. (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)). The New Jersey Supreme Court has "adopt[ed] the flexible criteria set forth in Section 241 of the Restatement (Second) of Contracts (1981) (Restatement (Second))" to determine whether a breach is material. Id. at 174-75. Therefore, we consider:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

13

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

[Ibid. (alteration in original) (quoting Restatement (Second), § 241).]

Applying these well-established principles, we start with the parties' acknowledgment that there are no material facts in dispute. Consequently, we draw all factual inferences in Guttenberg's favor.

In considering the parties' "intent" and "purpose" in entering into the Agreement, it expressly provides that the parties intended to "amicably" effectuate plaintiff's "transition" and "separation" from his employment with Guttenberg. The Agreement includes an exhaustive release of "any and all" claims against Guttenberg.

In accordance with the Agreement, plaintiff would take a paid leave of absence for seven months, August 2022 to March 2023. The Agreement required plaintiff to "submit a written request for" the leave, which he did. During the leave, plaintiff was to have no "professional responsibilities" and

only "limited contact," unrelated to Guttenberg's business. The Agreement was silent as to whether plaintiff could obtain other public employment during the leave period. Further, plaintiff was required to submit a "letter of retirement from all employment with . . . [Guttenberg], to be effective at the close of business on March 31, 2023," and plaintiff did so. The Agreement was silent as to whether plaintiff could obtain other public employment after March 31.

In addition to the paid leave through March 31, the Agreement required Guttenberg to make a "Separation Payment" which included plaintiff's "unused accrued vacation, sick, compensatory, and personal days for 2022 and 2023."

Considering all these circumstances, we conclude the Agreement was intended for the parties to end their relationship, with plaintiff releasing any and all claims and receiving payment, over time, rather than in a lump sum. We offer no conjecture regarding why the parties agreed to this structure. Nevertheless, it is apparent considering plaintiff had no employment responsibilities, and limited contact with Guttenberg, that plaintiff remained on the payroll merely to effectuate the payout.

Indeed, the leave of absence appears to be a means to an end. N.J.S.A. 40A:9-158 provides "[t]he governing body of any municipality may grant temporary leave of absence, with pay, to any officer or employee receiving a

15

fixed annual salary, wage or compensation." However, "[s]uch leaves of absence shall not exceed 3 months at any one time." Ibid. Moreover, "[w]here it is necessary to employ a substitute to perform the duties of such officer or employee during his [or her] absence, the amount of the compensation paid the substitute shall be deducted from the salary, wage[,] or compensation of such officer or employee." Ibid. Here, the leave was for seven months, and the Agreement provided for plaintiff to receive full pay rather than a reduced compensation amount to satisfy the acting clerk's compensation.

We next consider whether plaintiff materially breached the Agreement, thus excusing Guttenberg's remaining performance obligations. In this respect, Guttenberg contends plaintiff breached the Agreement because he: (1) "unlawfully" "accepted employment with Belleville," despite remaining on "Guttenberg's payroll," contrary to N.J.S.A. 40A:9-133(a); (2) effectuated a "de facto" resignation from Guttenberg by accepting employment with Belleville and "abandoned his rights under the Agreement"; (3) was "employed full-time by multiple public entities at the same time," in violation of the Public Employee Retirement System (PERS), N.J.S.A. 43:15A-57.2; (4) was required to be "an active employee on January 1, 2023," since Guttenberg's policy does not allow an employee to "accrue paid time off unless he [or she] is on . . . [Guttenberg's]

16

payroll as of January 1st of the fiscal year"; and (5) "purposeful[ly] fail[ed] to retire."

In considering these arguments, we reiterate our conclusion that the Agreement's paid-leave provision served solely as a means of effectuating plaintiff's separation from Guttenberg.

The Agreement is silent regarding plaintiff's ability to obtain public employment before March 31, 2023. Guttenberg's reliance on N.J.S.A. 40A:9-133(a) is misplaced. The statute allows for one municipality to share "a municipal clerk with another municipality or municipalities under a shared service agreement." N.J.S.A. 40A:9-133(a). Obviously, there is no shared "service agreement" between Guttenberg and Belleville. However, because of the parties' Agreement, plaintiff's role as the clerk of Guttenberg was nullified. Indeed, Guttenberg hired an acting clerk in plaintiff's stead. Thus, plaintiff was not the municipal clerk for both municipalities.

Moreover, it is pure fiction to assert that plaintiff remained as Guttenberg's municipal clerk after the parties executed the Agreement. He did not "de facto" resign as the municipal clerk from Guttenberg by obtaining employment with Belleville. Instead, he was, in fact, no longer Guttenberg's clerk after the parties signed the Agreement, because he was stripped of "any

professional responsibilities" and was allowed only "limited contact (not business related)" with Guttenberg; and after Guttenberg hired the acting clerk.

Further, Guttenberg's argument that plaintiff had to be an active employee and on payroll as of January 1, 2023, or he could not receive the 2023 Separation Payment is a red herring. First, the Agreement relegated plaintiff to the role of an inactive employee. Second, Guttenberg used plaintiff's employment with Belleville as an excuse to cease the payroll payments. Given our opinion that the payroll payments were nothing more than a means to effectuate settlement payments under the Agreement, those payments should not have ceased, and plaintiff would have been on the payroll—at least for purposes of settlement—as of January 1.

Lastly, we consider whether plaintiff breached the Agreement by failing to retire as of March 31, 2023. We note in the instances where the Agreement states "retire" or "retirement" it follows with "from all employment with" Guttenberg. Again, the parties' clear intent was to extinguish the parties' relationship and terminate plaintiff's employment with Guttenberg. Therefore, whether he actually retired as of March 31, 2023, was of no moment to Guttenberg, as long as the relationship was completely and irrevocably severed,

which it was. Therefore, we do not consider plaintiff's failure to retire as of March 31, to be a breach of the Agreement.

Furthermore, even were we to consider plaintiff's failure to actually retire as of March 31, 2023, as a breach of the Agreement, and we do not, it was not a material breach. Plaintiff's actual retirement did not go "to the essence of the contract." Roach, 228 N.J. at 174. Moreover, Guttenberg received the benefit of and was not deprived of any part of the Agreement. See ibid. Therefore, Guttenberg's performance obligation would not be excused.

Additionally, Guttenberg's reliance on N.J.S.A. 43:15A-57.2 is misplaced. Guttenberg contends the statute "generally bars public employees from receiving pension benefits (once retired) while continuing public employment in the same position or in any other position requiring PERS membership." However, even if plaintiff's purported retirement and receipt of pension benefits barred his employment with Belleville, it would not excuse Guttenberg's performance under the Agreement. Instead, pension compliance issues are entrusted to New Jersey's Department of the Treasury, Division of Pension and Benefits. See Berg v. Christie, 436 N.J. Super. 220, 230 (App. Div. 2014), rev'd on other grounds, 225 N.J. 245 (2016) ("The day-to-day administration of the retirement systems is conducted by the Department of the Treasury, Division of

19

Pension, N.J.S.A. 52:18A-95 to -100 (Division of Pensions); N.J.S.A. 43:15A-18 (PERS)[.] . . .").

To the extent we have not addressed Guttenberg's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

III.

Plaintiff contends the court erred in denying his motion for attorneys' fees and costs.

Appellate review of a trial court's decision granting or denying counsel fees "will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." In re A.D., 259 N.J. 337, 351 (2024) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 572 (2002) (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Rule 1:7-4 requires that "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of

right." Thus, "[i]n the absence of reasons, [an appellate court is] left to conjecture as to what the judge may have had in mind." In re Farnkopf, 363 N.J. Super. 382, 390 (App. Div. 2003) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "Failure to perform that duty 'constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)). "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4." Id. at 570.

"New Jersey has a strong public policy against the shifting of costs and . . . has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." In re Est. of Vayda, 184 N.J. 115, 120 (2005) (internal quotations marks omitted). Therefore, "a prevailing party may not be granted attorney's fees unless authorized by the parties' contract, court rule, or statute." Rock Work, Inc. v. Pulaski Const. Co., 396 N.J. Super. 344, 350-51 (App. Div. 2007).

The parties' Agreement provides:

> All parties shall bear their own attorney's fees and costs for the entirety of any matter or matters related to the subject matter of this Agreement, except that nothing in this Agreement or the documents referenced herein shall preclude either [p]arty from seeking attorneys' fees and costs in an action to enforce

21

> performance of any term of this Agreement should
> there be a default in performance.

[(Emphasis added).]

Here, the court determined "no reasonable fact finder could find that [p]laintiff [wa]s not entitled to the remaining sum of the . . . Agreement." Thus, the court granted plaintiff's cross-motion for summary judgment, however, it denied without explanation plaintiff's motion for attorney's fees and costs.

Therefore, we are constrained to vacate that part of the court's order that denied plaintiff's motion for attorney's fees and costs and remand the matter for further proceedings. We offer no opinion regarding the ultimate disposition of these issues.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division